## POOLE v. UNITED STATES.

### No. 5464.

Circuit Court of Appeals, Fourth Circuit.

Jan. 28, 1947.

David C. Rice, of Richmond, Va., for appellant.

George R. Humrickhouse, Asst. U. S. Atty., of Richmond, Va. (Harry H. Holt, Jr., U. S. Atty., of Hampton, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Robert Evans Poole, a member of the sect of Jehovah's Witnesses, registered on February 16, 1942, as required by the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq. and was classified as a conscientious objector. In subsequent proceedings under the statute he was ordered to report, and did report on January 7, 1943, to a civilian public service camp to which he was assigned, and remained in this camp and in other camps to which he was transferred until June 1, 1945, when he was granted a furlough expiring June 5, 1945. He failed to return from this furlough and on October 1, 1945, was indicted for violating Section 11 of the statute as amended, 50 U.S.C.A.Appendix § 311, by failing to remain in the camp until lawfully transferred or released.

Upon his arraignment he pleaded not guilty. He was offered the services of an attorney by the District Judge but refused the offer stating that he wished to defend himself. On December 5, 1945, he was

tried before a jury which found him guilty as charged and he was committed by the judge to the custody of the Attorney General for imprisonment for a period of two years.

On this appeal, in which he is represented by an attorney appointed by the court, the only substantial error charged is that the judge wrongfully held that the only issue for determination was whether the defendant violated the regulations by absenting himself from the camp without authorization. During the trial the defendant repeatedly offered to show that he was improperly classified as a conscientious objector since he had been an ordained minister of religion since 1935 and as such was exempted from training and service under the Act. In making this defense the defendant stated that he had presented the facts to his local board and that there was no evidence to the contrary, but that the board arbitrarily denied a judicial hearing and hence lacked jurisdiction to send him to the camp. He also moved for an adjournment of the hearing pending the decision by the Supreme Court in Estep v. United States and Smith v. United States, 327 U.S. 114, 66 S. Ct. 423, which had been argued but had not then been decided. The District Judge denied the motion for continuance and excluded the offered defense, since he was of opinion that the case was ruled by the decision in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

Considerable uncertainty has prevailed during the administration of the Selective Service System as to the authority of the courts to review the validity of the classification orders of the local boards when challenged by the registrants. The statute makes no explicit provision for such review but expressly provides that the decisions of the local boards shall be final. 50 U.S.C.A. Appendix, § 310(a) (2). It was held by this court in Goff v. United States, 4 Cir., 135 F.2d 610, that the total invalidity of an order to report for induction may be shown not only in habeas corpus proceedings but in defense of a criminal prosecution based on disobedience to the order. Opinion was not uniform, however, as to the stage of the selective service process at which a registrant could secure a review of the action of the board by the courts. See Rase v. United States, 6 Cir., 129 F.2d 204, 207; Ex parte Catanzaro, 3 Cir., 138 F.2d 100, 101; United States v. Kauten, 2 Cir., 133 F.2d 703, 706, 707; United States v. Grieme, 3 Cir., 128 F.2d 811, 814, 815; Steele v. United States, 8 Cir., 133 F.2d 1015; Johnson v. United States, 8 Cir., 126 F.2d 242. The Supreme Court in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, held that in a prosecution under Section 11 of the Act for willful failure of a registrant classified as a conscientious objector to obey the order of the local board to report for assignment to work of national importance, it is no defense that he was wrongfully classified as a conscientious objector rather than as a minister of religion. The court was of the opinion that even if judicial review to test the validity of the classification was required by the Constitution, it was not required prior to the completion of the selective service process by the acceptance of the registrant by the civilian public service camp. In Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917, it was held that a registrant who had reported to an induction center and had been accepted but had refused to take the oath of induction was not subject to court-martial for refusal to obey the orders of the military authorities but was subject solely to civil jurisdiction.

The implication of these decisions, however, was far from clear, and they were followed by the rulings in United States v. Estep, 3 Cir., 150 F.2d 768, and Smith v. United States, 4 Cir., 148 F.2d 288, wherein it was held that a registrant who reports for induction but refuses to submit thereto, has no right to a review of the validity of the classification of the local board in a prosecution for failure to obey the order of induction. On certiorari the decisions in these cases were reversed. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423. Therein the Supreme Court held that the defendant in such a case may show that the board acted beyond its jurisdiction in rejecting the claim of exemption and classifying the registrant as avail-

able for military service. The Supreme Court said, 327 U.S. at page 122, 66 S.Ct. at page 427 that while the courts are not to weigh the evidence to determine whether the classification of the board is correct, the question of jurisdiction is reached and may be considered if there is no basis in fact for the classification given by the board.

The latest case in this category, Gibson v. United States, 67 S.Ct. 301, was decided by the Supreme Court on December 23, 1946, and thereby the decision of the Eight Circuit, 149 F.2d 751, which relied on Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, and Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L. Ed. 917, was reversed. Gibson, like the defendant here, claimed exemption as a minister of religion but was classified as a conscientious objector and in obedience to the order of the board, reported to a selective service camp. He took this action in order to exhaust his administrative remedies and remained in the camp for five days and then departed without leave. He was indicted under Section 11 of the Act and offered in his defense various grounds going to the validity of the classification. The Supreme Court held that Gibson had not lost his right to make the defense by submitting to induction in the camp and hence he was entitled to the opportunity to show that the local board exceeded its jurisdiction. This case is in all respects like the present controversy but for the circumstance that Gibson remained in the camp only five days, intending at no time to submit to the jurisdiction or authority of the camp but only to make sure that the administrative process was complete, whereas the defendant in the pending case stayed in the camp two and a half years. The Supreme Court carefully refrained from passing on such a situation saying [67 S.Ct. 312] "We express no opinion concerning whether a different result might follow for one in Gibson's position if he should remain at the camp for a substantially longer period and then depart without leave." The

court also pointed out (note 30) that the Government made no contention that Gibson waived his rights by submitting to induction.

Notwithstanding this difference of fact, we are of the opinion that the Gibson decision furnishes the guide to be followed in the pending appeal. It is contended by the United States that the appellant completely submitted to the jurisdiction of the camp and thereby waived all right to dispute the validity of his classification. For a number of reasons, we are constrained to reject this view. During the trial in the District Court the appellant stated that after he had exhausted his efforts to secure exemption from the local board he went to the camp with the intent to continue the contest but was there subjected to the camp regulations and denied reclassification on the ground that he had accepted the status of a conscientious objector; and thereupon the judge stated without contradiction that it was conceded by the Government that the appellant had constantly sought 4-d classification, that is, exemption from the Act.

Moreover, apart from the concession, it is difficult to perceive how the appellant can be held to have completely and knowingly waived a legal defense to an accusation of crime when the courts themselves were in disagreement as to the right of a registrant to test the validity of his classification in a prosecution for a crime, and as to the precise point in the administrative process when the right, if it existed, should be asserted. In view of this uncertainty,[1] it cannot be justly said that the submission of the registrant to the authority of the camp for a substantial period amounted to the intentional relinquishment of a known right. In addition, it is not without significance that the appellant left the camp in order to reassert his right to judicial review of his classification when the Jehovah's Witnesses in the Smith and Estep cases were pressing their claims anew upon the attention of the courts and

---

[1] The uncertainty was augmented by changes in the regulations and by differences of legal opinion as to the interpretation and effect of the changes. See the discussion in Gibson v. United States, supra.

applications to the Supreme Court for certiorari were under way.

The conclusion we have reached is consistent with the rationale of the opinion of the Supreme Court in the Gibson case. The Government there contended that the defendant subjected himself to the camp's jurisdiction, and in doing so, irrevocably foreclosed himself from defending against the charge of desertion on the ground that his classification was invalid. This position of the Government was founded upon analogy to the cases which hold that one who has been inducted into the armed forces, though wrongfully, becomes subject to military jurisdiction and can secure release only by resort to habeas corpus. The court held, however, that there were compelling reasons why the analogy does not hold true. It pointed out the important differences between the two situations in that in the one the person concerned crosses the vast gulf between civil and military jurisdiction, with all the attendant consequences of change in status and rights, whereas in the other no such chasm is traversed. Speaking of a registrant, who is classified as a conscientious objector and remains a civilian, the court said:

"There is therefore no such profound change in rights, duties and status as occurs when one crosses the line between civil and military jurisdicton by being 'actually inducted' under the rule of Billings v. Truesdell, supra. It was this change and the consequences it entailed together with the statute's command that no one should be tried by military or naval court martial in any case arising under the Act until he had been actually inducted, which we there held to require placing the line precisely, not only for exhausting administrative remedies under the Falbo rule, but also for marking the point of actual induction at which the registrant's right ends to choose between going forward into the service and incurring the civil liability for breach of that duty.

\* \* \* \* \* \*

"Moreover, in the case of one entering the armed forces, the loss of civil rights, including those of recourse to the civil courts other than by way of habeas corpus, results altogether by virtue of the change from civilian to military status. The reasons underlying those rulings do not apply in the case of one who does not undergo that change, remains at all times a civilian, subject only to civilian duties and to civil penalties for violating them. There is not the same necessity or compulsion in such a case for bringing about forfeiture of civilian rights, including remedies for questioning the validity of the order the registrant is charged with violating. That compulsion arises from the necessity for preventing interruption of military processes by intrusion of the civil courts beyond the essential minimum of keeping open the habeas corpus channel to show that the military authority has exceeded its jurisdiction in dealing with the individual. It is on this foundation that the forfeiture of other civil remedies is held to take place."

This reasoning, it seems to us, is as applicable to one who stays a long time in the civilian camp as to one who leaves promptly after his induction.

The judgment of the District Court must therefore be reversed and the case remanded for a new trial at which the court will observe the rule that the findings of the local board must be accepted as final unless it appears that they had no basis in fact or that the board arbitrarily deprived the registrant of a hearing in accordance with the requirements of due process.

Reversed and remanded.