**NIZNIK v. UNITED STATES.**

**COMODOR v. UNITED STATES.**

Nos. 10622, 10623.

United States Court of Appeals
Sixth Circuit.

March 7, 1949.

Writ of Certiorari Denied June 6, 1949.

See 69 S.Ct. 1169.

330

Hayden C. Covington, of Brooklyn, N. Y. (Victor F. Schmidt, of Rossmoyne, Ohio, on the brief), for appellants.

Ferdinand Powell, Jr., of Knoxville, Tenn. (Otto T. Ault, of Chattanooga, Tenn., on the brief), for appellee.

Before ALLEN, MARTIN, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In the above cases, which were consolidated for trial and appeal, appellants were convicted by a jury of the offense of willfully leaving, and thereafter absenting themselves from a Civilian Public Service Camp in violation of the Selective Training and Service Act of 1940, as amended.[1] They claim error in the refusal of the district court to grant their motions for judgment of acquittal which they made on the trial, at the conclusion of the proofs.

On appeal, their principal contentions are: (1) that they were deprived of a fair hearing before the appeal draft board because of the failure of the local board to reduce to writing and make part of the record on appeal certain oral evidence offered by appellants upon their personal appearance before the board; and (2) that the local board illegally refused to consider the evidence offered by appellants upon their personal appearance because of prejudice and unfair discrimination.

The Selective Service Regulations[2] pertinent to the first issue provide:

"Section 625.1 Opportunity to appear in person. (a) Every registrant, after his classification is determined by the local board * * *, shall have an opportunity to appear in person before the member or members of the local board designated for the purpose if he files a written request therefor within 10 days after the local board has mailed a Notice of Classification (Form 57) to him. * * *"

"Section 625.2 (b). At any such appearance, the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification. Such information shall be in writing or, if oral, shall be summarized in writing and, in either event, shall be placed in the registrant's file. * * *"

[1] 50 U.S.C.A.Appendix, § 301 et seq.

[2] 32 Compiled Federal Regulations, Cum.Supp. (1944).

"Section 627.2 (a). The registrant, * * * may appeal to a board of appeal from any classification of the registrant by the local board * * *."

"Section 627.13 (a). Immediately upon an appeal being taken to the board of appeal, the local board shall carefully check the registrant's file to make certain that all steps required by the regulations have been taken and the record is complete. If any facts considered by the local board do not appear in the written information in the file, the local board shall prepare and place in the file a written summary of such facts. * * *"

"Section 627.24 (b). In reviewing the appeal, no information shall be considered which is not contained in the record received from the local board and the decision of the board of appeal shall be based solely thereon."

Appellant Comodor, in his Selective Service questionnaire, stated that he was a minister of religion and that, in his opinion, he should be given such classification, known as IV-D. Appellant Niznik stated in his questionnaire that he was a student preparing for the ministry. He did not indicate what classification he thought should be given him. Approximately four months after the filing of his questionnaire, in answer to a request for information from the local board as to whether there had been any change in his status, Niznik wrote that he was a minister, serving as one of Jehovah's Witnesses. Both appellants signed the Special Form for Conscientious Objectors, reciting at considerable length their religious views, their training, and their services in the work of religion. Both appeared before the local board and gave information as to their conscientious objection to war, as well as the nature of their work, services, and claims of status as ministers of religion. A brief memorandum purporting to contain the additional oral information given by appellants on the hearing was placed by the local board in each of their files. The local board classified them as I-A, available for full military service, and on appeal, the appeal board also classified them as I-A, apart from the question of consicientious objection, and in accordance with the statute and regulations, referred their files to the Department of Justice for hearings and reports upon their conscientious objection to war in any form. After a hearing before the designated official of the Department of Justice, and upon his recommendation, both appellants were classified by the appeal board as IV-E, conscientious objectors opposed to both combatant and non-combatant military service and available for work of national importance. However, on October 8, 1943, following physical examinations, both appellants were found physically unfit for such service, with the result that the local board classified them as IV-F, a disability classification.

On February 25, 1946, the local board again classified appellants as I-A. They appeared personally before the board, claiming ministerial status, repeated what they had said on the previous hearings, and told of the training and services which they were rendering in their religious work. Comodor also stated that he had been appointed as assistant to the presiding elder, and thereby occupied a position toward the congregation, similar to that of a member of the orthodox clergy. Again, a brief memorandum purporting to contain the oral information given by appellants on these hearings was placed in the file of each. After the hearing, the local board again classified appellants as I-A, and, on appeal, their classification was changed to IV-E, available for work of national importance. They later reported to a public service camp, but immediately left the camp and were afterward indicted and convicted.

It is the claim of appellants that they asserted, on their appearance before the local board, their claims to be exempt from all military training and service on the ground that they were ministers of religion; and that the local board deprived them of their right to a full and fair hearing de novo before the board of appeal to which they were entitled, by failing to summarize in writing and placing in their files the new and additional oral information which they submitted before the board to the effect that they were exempt from service because they were ministers of religion. They contend that the local

board thereby withheld from the appeal board the entire record and thus denied them the right of fair review to which they were entitled by law, inasmuch as they were not permitted by the regulations to appear in person before the appeal board.

On the trial, and at the conclusion of the proofs in the case, appellants moved the district court for a judgment of acquittal on the ground that they had been deprived of a fair hearing by the local board on their appeal to the appeal board for the reason that their records on appeal did not contain the evidence required to be therein set forth; that their classifications were, therefore, illegal; and that, accordingly, they had been guilty of no offense in leaving the camp. They, therefore, contend that the district court erred in not granting their motion for a judgment of acquittal.

In considering the requirements of Section 627.13 (a) of the regulations, which is similar to Section 625.2 (b) to which appellants refer in the foregoing contentions, it was said, in Smith v. United States, 4 Cir., 157 F.2d 176, 182, that they clearly required that the record of a registrant on appeal to the board of appeal shall contain a written summary of all the facts considered by the board in making its classification; and since the conclusions of the board of appeal are necessarily based upon the written record, omission of material facts deprives the registrant of his right to an adequate consideration of his case on appeal and amounts to a denial of due process by the local board which invalidates its classification. Whether there was such an omission of material facts from the record in this case must be determined largely from the testimony of appellants, and a consideration of the written evidence in their Selective Service files.

Comodor testified that on his appearance before the board, he pointed out that he had been trained for the ministry since the age of eleven years; that he had spent many hours regularly each week studying at home and under special teachers from 1935 to 1940; that, in September, 1940, he was ordained for the ministry; that he had participated in various phases of the ministry work of Jehovah's Witnesses. He stated that he explained in detail about the course of study that he had undergone and the number of private studies that he conducted in the homes of the people; that he called the board's attention to the fact that he was ordained and recognized by the Watch Tower Bible and Tract Society; and was qualified to teach and preach the Bible and tenets of the organization. At the time of his second appearance, Comodor filed a lengthy letter with the local board, calling attention to additional information as to his ministry and attaching several affidavits and other documentary evidence containing details of his preaching activity and his standing and recognition as an ordained minister. He offered additional oral evidence about a special course in what is known as the Theocratic Ministry School that he was pursuing to further qualify him as a minister; and told the board that he had been appointed to the position of assistant to the presiding minister or elder of the congregation of Jehovah's Witnesses, and that, by reason thereof, he occupied a position toward the congregation as do the orthodox clergy. Niznik testified he gave the board members oral information as to his schooling for the ministry and his practical training in applied field ministry work; stated that he was ordained; that he had spent many hours in the field ministry work, as a minister, each week; that he conducted Bible studies as a minister; spent regularly each month from forty to fifty hours in steady preparation for his ministerial activity and over sixty hours in the performance of actual preaching as a minister. He explained extensively to the board about the time he devoted to his course of study as a part of his ministerial work. On his second appearance, he gave oral information which was substantially the same as that previously given by him at his appearance in 1943, and, in addition, informed the board that he had been especially trained to give impromptu talks and extemporaneous talks; was schooled in voice training to aid in his preaching activity; and that his special training included a study of the books of the Bible, Bible characters,

and many other subjects usually taught ministers.

Everything, substantially, that appellants claimed to have introduced as oral evidence appears to have been already in the written evidence in their files, either in letters from appellants themselves or other documentary proof filed by them—certainly, at the time of their second appearance before the local board. Nevertheless, the local board did summarize, briefly, it is true, what it purported to consider the oral information given by appellants on their appearance before the board. It should be noted that the regulation in this respect provides that "The information furnished should be as concise as possible under the circumstances. The member or members of the local board before whom the registrant appears may impose such limitations upon the time which the registrant may have for his appearance as they deem necessary." [3]

In the case of Comodor, on his first hearing, the following summary was placed in his file by the local board:

"Registrant requested interview—has lost the sight of his left eye completely. Claims he is an ordained minister of the Gospel—also claims that ordination comes from the Jehovah God—never attended any theological Seminary—stated all Jehovah Witnesses are Ministers of God—does not receive any money—devotes all of his spare time to preaching the gospel. Is employed at the Chesebaro Company—stated organization was made only to keep them organized—Ordination was signed by the President of the Organization—Mother was a Roman Catholic—previous to his becoming a Jehovah Witness father never attended Church. Father is employed as a painter."

On his second hearing, the summary filed was as follows:

"Reg. appeared before the board and claims he is an Ordained Minister. Board told registrant then did not recognize that he was, and that he will remain in Class I-A (B).

"Reg. Appealed."

In the case of Niznik, on his first hearing, the summary was as follows:

"Registrant requested a 4-D classification —claims to be a Company Publisher. Claims that anyone who preaches the word of God is a Minister—stated he respects all the laws of this country as long as they don't conflict with the laws of God—"

On his second hearing, the summary filed was as follows:

"Reg. claims he has been a Jehovah Witness since 1935. Reg. works at Pgh. Box Factory—claims he is a minister. Registrant told that the board could not change his classification.

"Reg. Appealed."

■ The Selective Service Regulations [4] provide that on his personal appearance before the local board, the registrant may present such further information as he believes will assist the board in determining his classification. The oral information given by registrants which was required to be summarized in writing by the board, therefore, was "further" information—information presented orally in addition to the written information or evidence already in the registrant's file. If the oral evidence introduced by a registrant on his personal appearance before the board is the same as the written evidence contained in his file, it is difficult to see how it could be said that the record on appeal, which consists of written evidence and which is composed of the registrant's complete file, does not contain the evidence presented before the local board, and how a registrant could, in such a case, be deprived of a fair hearing on his appeal through failure of the local board to summarize the same information that already appears in written form in his file. It would seem that in this case, appellants would have no cause for complaining that the local board did not summarize in writing the information which they orally presented if that same evidence appeared in extenso in writing in appellants' complete file which was reviewed by the appeal board.

From our inspection of the record, there

---

[3] Section 625.2 (b) of the Selective Service Regulations.

[4] Section 625.2 (b) of the Selective Service Regulations.

was substantially no information presented orally in addition to what was already contained in the written evidence in the files which was not summarized. We see in this case, therefore, no unlawful refusal or failure of the local board to summarize in writing and place in appellants' file any additional information. Under these circumstances, we find in the action of the local board nothing contrary to law or of such a nature as would deprive appellants of a fair hearing on appeal or result in invalidity of their classifications. Our view is in accord with the determination of the court in United States v. Zieber, 3 Cir., 161 F.2d 90, 92, where it was held that if a registrant, on his appearance before the board, offered no new or further information in addition to that disclosed in writing in his file, what he said, on the occasion of his appearance, would not have to be reduced to writing or included in his file for the consideration of the appeal board.

■ While it clearly appears to us from the record that appellants introduced no "further" oral information, which was not summarized in writing by the board on their hearing, in addition to what already appeared in writing in their files, it is to be remarked that in cases in which this becomes an issue, and where there may be any doubt on the point, undoubtedly the trial court would submit the question to the jury to determine, as a matter of fact, whether a registrant did offer such further oral information in addition to what already appeared in his file; and where there is a conflict in the testimony or evidence on the point, the question must be submitted to the jury for determination. United States v. Zieber, supra; and on the event of retrial, it might well be that the evidence would be of such a nature that it would be necessary for the trial court to submit this issue to the jury.

■ It may be remarked that the government contends that any deficiency in the record on appeal was immaterial and gave the defendant no right to complain because he had the power himself to correct the record under the provisions of Section 627.12 of the Selective Service Regulations, which provide that a registrant who takes an appeal to the board of appeal may attach to his notice of appeal or the Selective Service questionnaire a statement specifying the respects in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file. In passing upon a similar contention of government counsel in Smith v. United States, supra, 157 F.2d at page 183, the court, in a statement in which we concur, said: "In our opinion this regulation does not relieve the local board of its duty in the premises or mitigate the consequences of a failure on its part. The regulation confers a privilege but does not impose a duty upon the registrant; for it cannot be supposed that Congress intended to deal with registrants as if they were engaged in formal litigation, assisted by counsel, and therefore charged with the obligation to examine and approve a record on appeal."

The second and crucial issue in the case is whether appellants were deprived of a fair hearing and denied due process of law because of prejudice and unlawful discrimination on the part of the local board in refusing to consider evidence offered by appellants in support of their claim to ministerial status.

■ As has been pointed out, according to the regulations, every registrant has a right to appear and discuss his classification with the local board, point out the class in which he thinks he should have been placed, and direct attention to any information which he believes will assist the local board in determining his proper classification. If the local board refuses to consider new information offered by the registrant at the time of his personal appearance and neglects to include it in his cover sheet, or if the board refuses to receive new information which the registrant endeavored to offer, such registrant is thereby denied due process of law; and

a failure by the local draft board to perform its duty to consider and receive such new information, which is imposed upon it by the Selective Training and Service Act and regulations, could not be cured by de novo consideration of the registrant's classification by the appeal board, if material which should have been included by the local board in the registrant's file was not included so that the appeal board could consider it. United States v. Zieber, supra. Moreover, the purpose of the registrant's personal appearance is not solely to present the local board with new information. It is also to enable the registrant to discuss his classification with members of the board on the basis of the information already in his file, and to make an oral argument that the information already furnished, when given proper weight, calls for a different classification. "The right to have such an opportunity to talk over and explain his case to members of the board is obviously of the greatest value to a registrant even though he has no new information to present and this right the regulation guarantees." United States v. Stiles, 3 Cir., 169 F.2d 455, 458. The test of whether a draft board's action may be attacked is whether it receives and considers what a particular registrant submits. Ex parte Stanziale, 3 Cir., 138 F.2d 312. The findings of the local board are subject to attack when the board arbitrarily deprives the registrant of a hearing in accordance with the requirements of due process. Poole v. United States, 4 Cir., 159 F.2d 312. It is provided in Section 623.1 (c) of the regulation that:

"In classifying a registrant there shall be no discrimination for or against him because of his race, creed, or color, or because of his membership or activity in any labor, political, religious, or other organization. Each registrant shall receive equal and fair justice."

Comodor testified that, on his personal appearance, when the local board learned that, as a Jehovah's Witness, he had refused to salute the flag because of religious scruples, one of the members of the board said: "Anybody that refuses to salute the flag, and anyone who refuses to stand up at the National Anthem, or defend their country, they don't have any right under the law. * * * the way we feel, we'd like to put you all in a boat and out in the middle of the ocean and sink the boat, all you Jehovah's Witnesses." He continued: "The battle was very hot; it wasn't fair and square, they were all on top of me. * * * And then they said, 'Well, we don't have any time for you. * * * be on your way.'" On his second appearance before the board, Comodor testified that the members of the board said: " 'Well, we don't have time for you. * * * we can't give you a IV-D. We're not going to give any of Jehovah's Witnesses a IV-D, no matter what your file proves.' * * * All of them were signing cards * * * for other registrants, and that was the fellow on the right of me who was the chairman, and * * * the clerk of the board was talking to him, and between their talking among each other I honestly can say that they weren't paying strict attention to (me) * * * The first thing they told me when I came in (was) 'Well, we know who you are, * * * we're not going to have time for you.'"

Niznik testified that on his first appearance before the board, he told the members that he was there to discuss his request for ministerial status. He stated that when he informed them he was unable to salute the flag because of his religious views, that "right then and there the board became furious, and said that anyone who does not salute the flag or get up for the National Anthem, or bear arms for this country, should be thrown out of the country, they don't have any right in this country. * * * They said that * * * they weren't giving Jehovah's Witnesses any classification of IV-D"; that the reason was "the Jehovah's Witnesses only stir up trouble amongst the people with their teachings." He testified that on his second appearance, the board said that Jehovah's Witnesses were not a charitable organization like the Red Cross and they had more respect for it than for Jehovah's Witnesses; that "the board said as far as they were concerned, even though I was a min-

ister, they weren't going to give me a IV-D. That Jehovah's Witnesses weren't an orthodox religious organization, like the others in existence * * * they paid no attention to me. Half the time they were signing draft cards, * * * they were talking amongst each other, what to classify this fellow and what to classify that fellow."

Whether the members of the local board made the foregoing statements and engaged in the conduct attributed to them by appellants was a question of fact. The board members were not sworn as witnesses, and the government introduced no evidence to contradict appellants' testimony in this regard. If true, it clearly proved prejudice and unlawful discrimination on the part of the local board against appellants and deprived them of a hearing in accordance with the requirements of due process. For appellants had a right to have the board consider their arguments and evidence fairly and to have the question of their status determined according to the evidence, without prejudice or unfair discrimination. The trial court was of the opinion that the appellants' classification by the board was final, unless it was without basis in fact, under the rule announced in Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, and that whether there was such a basis was a question of law for the court to determine. There being such a basis, in the opinion of the trial court, in the case of appellants, it was held that the determination of the board could not be reviewed by the court. It is true that it was decided in the Cox case that the decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. See also Smith v. United States, 4 Cir., 157 F.2d 176; and the courts are not to weigh the evidence to determine whether the classification made by the local board was justified. However, the regulations limit and define the jurisdiction of the boards, and when a board's action is the

result of prejudice, and its classification based on discrimination, its conduct is lawless and beyond its jurisdiction. Estep v. United States, 327 U.S. 114, 121, 66 S.Ct. 423, 90 L.Ed. 567. A draft board loses jurisdiction when it proceeds arbitrarily and without due regard to the rights to which a registrant is entitled under the regulations. Smith v. United States, supra. As was said in United States v. Zieber, 3 Cir., 161 F.2d 90, 93, "The court below did not present the important questions of fact, hereinbefore outlined, to the jury for its determination or instruct the jury that the action of the Local Board contrary to the Act or regulations 'would be lawless and beyond its jurisdiction.' "

The material questions of fact, as heretofore indicated, should be submitted to the jury under appropriate instructions as to the law, so that it may be determined whether the registrants have been afforded due process of law. If, on the event of a retrial, appellants' testimony is disputed, the case should be submitted to a jury. If appellants' testimony and evidence on retrial should be substantially the same as on the former trial, and should be uncontradicted, appellants would be entitled to an acquittal.

Contrary to appellants' claim, they were not, under Section 625.2 of the Selective Service Regulations, denied due process because they were refused the right to be represented by counsel in the hearings before the draft boards. United States v. Pitt, 3 Cir., 144 F.2d 169. They were not entitled to a judicial trial before the draft boards, but rather to judicial review, in the criminal proceedings, of the board's administrative action, as was given them in this case. This assured judicial consideration of their rights. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115.

In accordance with the foregoing, the judgments are reversed and set aside, and the causes are remanded to the district court for a new trial.