## IMBODEN v. UNITED STATES.
### No. 11420.

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1952.

Stanley U. Robinson, Jr., Columbus, Ohio, Stanley U. Robinson, Jr., Columbus, Ohio, on brief, for appellant.

Loren G. Windom, Columbus, Ohio, Ray J. O'Donnell, Loren G. Windom, Columbus, Ohio, on brief, for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Loy Vernal Imboden, was indicted for refusing service in the Armed Forces of the United States by refusing to be inducted into the United States Army, under the provisions of § 462, Title 50 U.S.C.A.Appendix, Universal Military Training Service Act of June 24, 1948, and Regulation 1632.14 thereunder. Following a trial by jury and a verdict of guilty, he received a sentence of five years. This appeal followed.

Appellant was born on September 16, 1925. Under the 1940 draft law, he was deferred as an essential agricultural worker. He registered with his local draft board under the 1948 draft law on September 7, 1948. On September 28, 1948, he filed his classification questionnaire, claiming a 2-C classification as a farmer. On October 5, 1948, he filed his special form for conscientious objector which stated that he was a member of the Brethren Church of Ashland College and customarily attended the Glenford Brethren Church at Glenford, Ohio, and that he was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form. On October 8, 1948, he was classified 1-A. Upon his written request therefor, his local board granted him a hearing on October 29, 1948. A clerk of the board took down the proceedings in question and answer form, which recording was transcribed and put into appellant's file to constitute the written summary of the hearing required by Regulation 1624.2(b). Following the hearing, appellant was continued in class 1-A, from which classification he took an appeal to the Appeal Board. He was given a physical examination on December 8, 1948, which he passed. On January 18, 1949, the Appeal Board reviewed the file and determined that he should not be classified 1-A-O or IV-E, the two conscientious objector classifications.

In accordance with the provisions of § 456(j), Title 50 U.S.C.A.Appendix, and Regulation 1626.25, appellant's file was referred to the Department of Justice for inquiry and hearing relative to the claimed exemption because of conscientious objections, and appellant was notified under date of June 15, 1949, that a hearing would be held to consider his claim for exemption by a hearing officer at Columbus, Ohio, on June 28, 1949. On June 17, 1949, the appellant wrote the hearing officer requesting that he advise him as to the general nature and character of any evidence (if any) in his possession which was unfavorable to or tended to defeat the claim. On June 23, 1949, the hearing officer wrote appellant stating—"In compliance with the above request, you are advised that the Federal Bureau of Investigation has submitted an extensive report which becomes a part of your Selective Service File. * * * Statements and evidence obtained by the Federal Bureau of Investigation which is seemingly unfavorable to your claim may be summarized as follows." The letter stated that the information was obtained from the following persons, whose names and addresses, however, were not given:

"A woman who states that she has been an active member of the Glenford Brethren Church for fifty years, * * *, recalls no one by the name of Imboden, * * *."

"An official of the Glenford Brethren Church states * * *."

"An official of the Olivet Church of the Brethren at Five Points for many years, states * * *."

"An official of Ashland College advises * * *."

"A supervising official of the Glenford Brethren Church since 1945, advises * *."

"A former supervising official of the Glenford Brethren Church, who has been

a minister in the Church for fifty years, states * * *."

These various informants stated that they were well acquainted with the members of the Glenford Brethren Church, that they did not know of anyone by the name of Imboden who had been connected with the Church, that no records were available to verify appellant's entrance into the Brethren Church, that the Brethren Church never opposed universal military training, and that the matter of military service was strictly a matter of individual feeling. The letter also stated that it appeared that appellant's oldest brother did not at any time file a claim as a conscientious objector, had served in the U. S. Navy, was released from active duty with the rank of Ensign, and had been attached to the U. S. Naval Reserve. At the hearing on June 28, 1949, appellant appeared without witnesses but brought with him letters and affidavits to substantiate his conscientious objector claim. These documents stated that appellant was a member of good standing of the Mt. Zion Brethren Church at Logan, Ohio, and attended services there regularly until they were discontinued, since which time he had attended "the Glenford Church when convenient, a distance of about thirty miles." He was afforded the opportunity to make any additional statement. The hearing officer reported in his subsequent Statement that appellant stated he had attended church service only six or seven times in the last five years, and that after receiving the hearing officer's summary of information obtained by the Federal Bureau of Investigation, in which it was stated that the teachings of the Brethren Church were not opposed to universal military training, the appellant stated that he relied mostly upon his own personal conviction respecting non-participation in war as a cause for his exemption from military training. Under § 456(j), Title 50 U.S.C.A.Appendix, the religious training and belief which will classify one as a conscientious objector does not include "a merely personal moral code." The hearing officer recommended that the finding of the Appeal Board be sustained and that appellant's claim as a conscientious objector be denied. This recommendation

was concurred in by the Department of Justice and was followed by the Appeal Board. On September 17, 1949, it classified appellant 1-A.

No inductions were being made at that time. On July 17, 1950, appellant was ordered to report for an armed forces physical examination on August 7, 1950. He was found acceptable for induction into the armed services. Following receipt of the notice of July 17, 1950, he asked for a hearing before the local board for the purpose of reopening his classification. By letter of July 21, 1950, in affidavit form, his mother requested that appellant be deferred from military service by reason of his farming operations, which were reviewed somewhat in detail, and also because of his conscientious objections to war in any form. A hearing was held on July 22, 1950, and a memorandum of what occurred was placed in appellant's file. On September 2, 1950, the local board wrote appellant—"No definite action was taken in regard to your classification by Local Board No. 61, Hocking County, Logan, Ohio, at their regular meeting September 1, 1950." No written communication was sent to appellant's mother.

On August 22, 1950, an order to report for induction on September 8, 1950, was mailed to appellant. He reported for induction and was taken to Fort Hayes, Ohio. He was told that when his name was called he should take one step forward which would constitute his induction. When his name was called he refused to take the step forward. He was then sent home.

Later appellant received a new classification card from his local board dated October 7, 1950, notifying him that he was 1-A. He wrote a letter to the board appealing from that classification, but his Selective Service file was never sent to the Appeal Board. The Grand Jury returned the within indictment on December 15, 1950.

At the trial, the foregoing facts were established without dispute by witnesses for the Government and for the appellant including the appellant himself. The Trial Judge in charging the jury stated that he had examined the draft board file of the appellant and found that there was a basis in fact for the classification made by the Se-

512

lective Service Board; that the jury was not called upon to substitute its judgment for the judgment of the draft board; and that the question for the jury was not whether it agreed with the classification given by the draft board, but whether the draft board acted in accordance with the regulations governing it when it considered the appellant's case. Appellant objects to the fact that the Trial Judge stated to the jury that he had found that there was a basis in fact for the classification made by the Board, contending that this was a question of law exclusively for the Court.

In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, the Supreme Court held that the courts are not to weigh the evidence to determine whether the classification made by the local board was justified, and that the decisions of the local boards made in conformity with the regulations are final even though they may be erroneous, if there was a basis in fact for the classification which it gave the registrant. Whether such a basis in fact existed is a question of law for the Court, not a matter to be submitted to the jury. Miller v. United States, 6 Cir., 169 F.2d 865. In Niznik v. United States, 6 Cir., 173 F.2d 328, and Id., 6 Cir., 184 F.2d 972, we held that the Regulations limit and define the jurisdiction of the board, that action of the local board contrary to the Regulations, or made as the result of prejudice, or based on discrimination, would be lawless and beyond its jurisdiction, and that whether the board so acted was a factual question for the jury. The foregoing instructions of the Trial Judge were in accord with those rulings and were necessary and proper to correctly present to the jury what was eliminated from their consideration as well as the issue which was presented for decision.

We agree with the Trial Judge that there was a basis in fact for the 1-A classification given appellant. Selective Service Regulation 1622.5 provides—"In Class 1-A shall be placed every registrant who * * * has failed to establish to the satisfaction of the local board * * * that he is eligible for classification in an-

other class." Although appellant was operating a 160-acre farm by himself and had been deferred as an essential agricultural worker under the 1940 Draft Law, such a deferment was mandatory under that law. Under the 1948 law such a deferment was given only when it was found that the registrant could not be replaced because of a shortage of persons with his qualifications or skill in such activity and the removal of the registrant would cause a material loss of effectiveness in such activity. Regulation 1622.10. The memorandum of the hearing before the Local Board on October 29, 1948 shows that it was the view of the Board that plenty of farm produce was available in 1948 and that it was unnecessary to defer appellant again. The file does not contain facts which would show that the removal of the appellant would cause a material loss of effectiveness in agricultural activity.

The special form for conscientious objector filled out by appellant showed that he was a member of the Brethren Church, Ashland College, Ashland, Ohio; that he joined the Mt. Zion Brethren Church at Logan, Ohio, and customarily attended the Glenford Brethren Church at Glenford, Ohio; that he received the training and acquired the belief during Sunday School lessons and sermons at which he was present at the Brethren Church; that he relied principally upon his father, a minister, at Youngstown, Ohio, for religious guidance; and that his actions and behavior which principally demonstrated the consistency and depth of his religious convictions consisted of his action at home and at work, without further description or development of such action, and that he was unable to designate any time or place where he had given public expression, written or oral, to the views expressed as the basis of his claim. The Brethren Church did not require its members to support the idea that christians should not participate in war. In our opinion, there was a factual basis for the finding of the Board that the appellant had "failed to establish to the satisfaction of the local board" that he qualified as a person, "who, by reason of religious training and belief, is conscientiously opposed to

participation in war in any form." Sec. 456(j), Title 50 U.S.C.A.Appendix. On appeal, the statement of the Hearing Officer reporting on the hearing before him, to which was attached copies of the letters between appellant and the Hearing Officer, gave facts and statements by the appellant at the hearing, as hereinabove set out, fully sustaining the action of the Appeal Board in denying appellant a conscientious objector classification. This became part of appellant's Selective Service File, although the original of the report of the Federal Bureau of Investigation was retained in the office of the District Attorney.

 Appellant contends that he was denied due process of law when he was not permitted to know the names and addresses of the informants interviewed by the Federal Bureau of Investigation, and the information so obtained was used by the Hearing Officer in the hearing held by the Department of Justice. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S. Ct. 624, 95 L.Ed. 817. Deferment by reason of religious training and belief is not a constitutional right, but is a matter within the discretion of Congress. United States v. MacIntosh, 283 U.S. 605, 623–624, 51 S.Ct. 570, 75 L.Ed. 1302, overruled on other grounds; Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084. The statute granting deferment in the present case provides for an inquiry and hearing by the Department of Justice for the purpose of making a recommendation to the Appeal Board. The recommendation is not binding. The hearing was not a criminal trial. Bailey v. Richardson, 86 U.S.App. D.C. 248, 182 F.2d 46, Id., 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352. The procedure under the draft law and the resulting classification of the registrant is not a judicial trial with the right to be represented by counsel and to call, examine and cross-examine witnesses. Peterson v. United States, 6 Cir., 173 F.2d 111, 115; Niznik v. United States, 6 Cir., 173 F.2d 328, 336; Ex parte Stanziale, 3 Cir., 138 F.2d 312, 314, certiorari denied, Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267, 88 L.Ed. 481. Appellant's constitutional rights were not violated by the inquiry and hearing.

 We do not agree with appellant's contention that he was denied a conscientious objector classification because he had been irregular in church attendance. Regular church attendance is not required by the statute. But failure to participate in the activities of a religious organization, membership in which is urged as a basis for deferment, is a fact properly to be considered in determining whether conscientious objection to war is the result of religious training and belief or represents a merely personal moral code. Since there is no constitutional requirement that Congress recognize religious training and belief as a grounds for deferment; United States v. MacIntosh, supra; Congress was within its rights in declining to recognize it unless it included more than a merely personal moral code. § 456(j), Title 50 U.S.C.A.Appendix.

 Appellant nevertheless contends that his classification as 1-A was illegal because the local board failed to follow the Regulations in making the classification. He was entitled to raise such issues at the trial. Niznik v. United States, supra, 173 F.2d 328 and Id., 6 Cir., 184 F.2d 972.

[14–16] In support of such contentions, appellant introduced at the trial the written memorandum of the proceedings before the local board on October 29, 1948. In rebuttal, the Government called as a witness the Chairman of the local board who testified about the hearing. Appellant contends that it was prejudicial error to allow the Chairman to so testify, in that the memorandum of the proceedings made by the Clerk of the board presented the facts without contradiction thus raising a question of law for the Court rather than a question of fact for the jury. We do not agree with this contention. Appellant testified on cross examination that it was not the complete transcript of the hearing. The Chairman of the board testified that it was substantially correct. He did not deny the proceedings as so recorded. His testimony was supplemental to and explanatory of the recorded facts. As such it was properly admitted in evidence. In addition, the questions and answers as so recorded in the memorandum were susceptible of more than one inter-

pretation. The inferences to be drawn from uncontroverted as well as controverted facts are questions for the jury. Ellis v. Union Pacific Co., 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S. Ct. 409, 88 L.Ed. 520.

Regulation No. 1624.2 provides that a registrant may appear in person before the board and that "At any such appearance, the registrant may discuss, his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification. Such information shall be in writing, or, if oral, shall be summarized in writing and, in either event, shall be placed in the registrant's file. The information furnished shall be as concise as possible under the circumstances. The member or members of the local board before whom the registrant appears may impose such limitations upon the time which the registrant may have for his appearance as they deem necessary." Appellant contends that these provisions of the Regulation were not followed at his appearance before the local board on October 29, 1948, in that he was not permitted by the board to discuss his right to classification as a farmer and as a conscientious objector, and that the Board was prejudiced against him and acted arbitrarily in denying him a classification as a farmer and as a conscientious objector.

With respect to his classification as a farmer, he relies upon the following statement of the Chairman of the board. The Chairman told him—"You realize you got out of that other war because you were essential. You stayed up there on the farm when the other boys had to get out and go. As far as this new Selective Service is concerned there is going to be no farm deferment," to which the appellant replied, "I didn't know that." Appellant contends that he interpreted this statement to mean that no farm deferment was permitted under

the 1948 Act, and that therefore he discontinued his discussion about that phase of his classification, and that his rights were violated by this incorrect interpretation of the law. However, the memorandum also shows that prior to this statement the appellant told the board the material facts about his operation of the farm and that following the statement of the Chairman above referred to the Chairman also said—"If you got anybody to operate that farm it is now your turn. Have you ever tried to get somebody," and that some further discussion followed about appellant's agricultural deferment. The Chairman testified that in making the statement above referred to he did not mean to imply that no farm deferment was permitted under the 1948 Act, but meant to advise the appellant that due to the change in the law by the 1948 Act and because farm produce was at that time sufficiently available there would be no farm deferment for the appellant. This view is substantiated by the following later statement of the Chairman, as also shown by the memorandum,—"The thing is that right now there is going to be no 2–C deferments like you had before. * * *"

With respect to appellant's claim as a conscientious objector, the memorandum shows that appellant stated to the board—"I don't believe in it, the Army, Navy or anything else," that the Chairman answered —"You are just going to try most anything to keep from going," to which the appellant replied, "No I am not going to try anything," to which the Chairman responded: "You are a conscientious objector? There are plenty of good jobs there they can give you. You can keep the barracks clean. The last time you told us about your shooting skill," and that after two more statements by the appellant, the Chairman said— "Well, that's enough of that." However, upon cross-examination, appellant did not complain of any denial of his right to present further information with respect to this claim. The following questions and answers seem to sum up the substance of his complaint:

"Q. What else is there that you wanted in? A. The only thing I was interested

in is if they believed it there would be no reason for them to ask questions, but since they disregarded they should have asked some questions.

"Q. All you wanted was them to ask you questions about it, is that right? A. No, I didn't want them to ask any questions as far as that goes, but they didn't appear to have any questions in their minds, as to——

"Q. It is correct, is it not, that the doctrine of the Brethren Church does not require you to be a conscientious objector to be a member? A. It doesn't require, no.

"Q. Then, in your particular case, is your conscientious objection based solely upon your own personal beliefs? A. They recommend it to their members, and I have agreed to that and followed that."

At another point appellant stated "they didn't bring out any examination—they didn't give any reason why I should not be given it and yet they denied me the classification."

■ At the time of this interview the board already had the material facts about appellant's farm and his religious training from the classification questionnaire and the special form for conscientious objectors. The record does not show what, if any, other material facts or information the appellant had to give to the board. Before the interview was terminated the Chairman asked the appellant, "Have you anything further to say," to which appellant replied, "Don't think so," and that the Chairman then said—"Well, that will be all then, goodnight." The regulation provides that the board "may impose such limitations upon the time which the registrant may have for his appearance as they deem necessary." The appellant testified that the board members appeared unfriendly, looked away into space or busied themselves with other things, and that the Chairman got angry. The Chairman testified that the board considered the question of farm deferment and the matter of conscientious objections, that he knew the Regulations authorized such classifications, but that a registrant had to qualify under the Regulations in order to be so classified, and that the classifications were not refused merely because appellant had been deferred in the previous war. Under the foregoing evidence, we are of the opinion that the trial judge was correct in overruling appellant's motion for a directed verdict, and in submitting to the jury the issues with respect to his appearance before the board. These issues were fairly submitted by the instructions. The trial judge charged the jury somewhat at length to the effect that if it found that the board denied appellant any right provided by the Regulations, or did not give full and fair consideration to the Regulations, or if it acted arbitrarily or capriciously in the matter, then its action was unlawful.

Other questions, raised by appellant are considered by us as minor in nature, not well taken, and are rejected.

Judgment affirmed.