## Mueller Petition for Naturalization

Petitioner, in propria persona.

· *G. Morell,* designated naturalization examiner.

CARR, P. J., November 21, 1955.—This is a petition for naturalization under the general provisions of the Immigration and Nationality Act, and the question involved is whether petitioner, being unwilling to bear arms on behalf of the United States but willing to perform noncombatant service in the armed forces of the United States and work of national importance under civilian direction, may lawfully be admitted to citizenship.

### Findings of Fact

1. Petitioner, John August Mueller, aged 47 years, a native of Canada and a Canadian citizen, lawfully entered the United States for permanent residence on September 3, 1932, and has since resided continuously in the United States. He is a regularly ordained Baptist minister, and for the last five years has been pastor of the Great Bethel Baptist Church of Uniontown, Fayette County.

2. Petitioner has shown by clear and convincing evidence to the satisfaction of this court that he is opposed to the bearing of arms in the armed forces of the United States by reason of religious training and belief but is willing to perform noncombatant service in the armed forces of the United States or work of national importance under civilian direction when required by law. His opposition to the bearing of arms arises from his belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, and not from essentially political,

sociological or philosophical views or a merely personal code.

3. Petitioner is and has been during the period of five years last past and upwards a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

## Discussion

The naturalization examiner designated to conduct the preliminary examination upon the petition reports the following findings of fact: (a) That petitioner is an alien and filed a petition for naturalization on March 21, 1955; (b) that petitioner is opposed to the bearing of arms in the armed forces of the United States; (c) that petitioner received no direct religious training to oppose the bearing of arms in the armed forces of the United States; (d) that petitioner's conviction against the bearing of arms in the armed forces of the United States is purely his own interpretation and not that of his religious group; (e) that petitioner is willing to perform noncombatant service in the armed forces of the United States and is willing to perform work of national importance under civilian direction when required by law. The examiner concludes that petitioner is unable to take the oath of allegiance as required by section 337(a) of the Immigration and Nationality Act of June 27, 1952, 66 Stat. at L. 258, 8 USCA §1448, and therefore recommends that the petition for naturalization be denied, saying that, though petitioner's loyalty to the United States and his credibility are not questioned, it appears that the religious group with which he is associated does not teach and advocate as a tenet of its faith opposition to the bearing of arms.

In our opinion the examiner's findings (c) and (d) and his conclusion cannot be sustained. They are based entirely upon the following testimony of petitioner:

"Q. Are you willing, if required by law, to bear arms in behalf of the United States? A. No, sir.

"Q. Are you willing to perform noncombatant service in the Armed Forces if required by law? A. Yes, sir.

"Q. Are you willing to perform work of national importance under civilian direction? A. Yes, sir.

"Q. Will you please state your reason for your unwillingness to bear arms in behalf of the United States? A. My unwillingness is due to the fact that as a minister of the Church of Christ I find violence incompatible with the fundamental doctrines of the church as interpreted from the New Testament Scriptures, namely, the Gospel of Jesus Christ.

"Q. What is your particular sect? A. The church of which I am a member is affiliated with the American Baptist Convention which is not a sect but an organized denomination of our country. In fact, the Baptist Conventions, if they could be united, would constitute the largest Protestant denomination in America.

"Q. What is the extent of your training insofar as your affiliation with the Baptist church is concerned? A. You mean academic training? Q. Yes. A. College and seminary.

"Q. Does your religious denomination object to or oppose the bearing of arms as a group? A. No, sir. I would not say that they do. Each church being autonomous, it becomes very definitely a case of individual conviction and interpretation.

"Q. Does your interpretation of the Commandment 'Thou shall not kill' mean that you would not bear arms in defense of the United States? A. Yes, sir.

"Q. However, that interpretation is not the interpretation of the Baptist denomination as a whole? Is that right? A. Neither I nor anyone else can give you an interpretation of any part of Scripture that would

be speaking for the Baptists as a whole. As I have said, each church is an authority unto itself—is autonomous. Baptist lay members of the church as well as clergymen must of necessity come to their own interpretation of the Scriptures. In other words, we are considered to be what is called a free church; therefore, it's impossible for me to answer does that interpretation apply to the denomination as a whole.

"Q. It would appear to me that your attitude towards bearing of arms stems from your own personal conviction rather than from the conviction of the religious group of which you are a member. Is that correct? A. Yes, that is definitely true."

Section 337(a) of the act, 8 USCA §1448(a), provides: "A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) (A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law. Any such person shall be required to take an oath containing the substance of clauses (1)-(5) of the preceding sentence, except that a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to the bearing of arms in the Armed Forces of the United States by reason of religious training and be-

lief shall be required to take an oath containing the substance of clauses (1)-(4) and clauses (5) (B) and (5) (C) of this subsection, and a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of said clauses (1)-(4) and clause (5) (C). The term 'religious training and belief' as used in this section shall mean an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

Thus a person who, by reason of religious training and belief, cannot promise to bear arms is not thereby disqualified from becoming a citizen of the United States; he may, if his religious training and belief debar him from bearing arms, promise instead to perform noncombatant service in the armed forces of the United States and work of national importance under civilian direction when so required by law. As the Supreme Court of the United States said in Girouard v. United States, 328 U. S. 61, 90 L. Ed. 1084:

"The bearing of arms, important as it is, is not the only way in which our institutions may be supported and defended, even in times of great peril. Total war in its modern form dramatizes as never before the great coöperative effort necessary for victory. The nuclear physicists who developed the atomic bomb, the worker at his lathe, the seaman on cargo vessels, construction battalions, nurses, engineers, litter bearers, doctors, chaplains—these, too, made essential contributions. And many of them made the supreme sacrifice. . . . One may serve his country faithfully

and devotedly, though his religious scruples make it impossible for him to shoulder a rifle. Devotion to one's country can be as real and as enduring among noncombatants as among combatants. One may adhere to what he deems to be his obligation to God and yet assume all military risks to secure victory. The effort of war is indivisible; and those whose religious scruples prevent them from killing are no less patriots than those whose special traits or handicaps result in their assignment to duties far behind the fighting front. Each is making the utmost contribution according to his capacity. The fact that his role may be limited by religious convictions rather than by physical characteristics has no necessary bearing on his attachment to his country or on his willingness to support and defend it to his utmost."

Nor does the act in terms require a petitioner for naturalization to be a member of a religious group or organization opposed to war in order to be entitled to take the alternative oath. The language of the act is general and unambiguous, and consequently, to read such limitation into it by implication would be to violate one of the most familiar rules of statutory construction. The fact that the Christian denomination of which he is a member takes no official stand against the bearing of arms is, of course, a circumstance to be considered in determining the sincerity of his opposition on religious grounds, but it is not conclusive. It is well known that there are members of many, if not all, Christian denominations who cannot conscientiously participate in war even though not debarred from doing so by any denominational tenet or teaching. In every case the question is one of conscience rather than association, of individual rather than corporate belief. If one accepts the idea of God and conscientiously believes that the taking of human life is contrary to his will, that is all that the

law requires: United States v. Alvies, 112 F. Supp. 618, and Imboden v. United States, 194 F. 2d 508, certiorari denied 343 U. S. 957, so construing the identical language of the Selective Service Act of June 24, 1948, 62 Stat. at L. 609, as amended by the Act of June 19, 1951, 65 Stat. at L. 83, 50 USCA App. §456(j). The legislative history of the Immigration and Nationality Act leaves no doubt of the intention of Congress to recognize the claims of conscience on the part of naturalized citizens as fully as of those of native birth: U. S. Congressional and Administrative News, 82nd Congress, Second Session, 1952, vol. 2, pp. 1741 and 1756.

### Conclusions of Law

1. Petitioner is able and qualified to take the oath of allegiance as required by section 337(a) of the Immigration and Nationality Act.

2. Petitioner is entitled to be admitted to citizenship upon taking in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) to perform noncombatant service in the Armed Forces of the United States when required by the law, and to perform work of national importance under civilian direction when required by the law.

### Order of Court

And now, November 21, 1955, upon consideration of the petition of John August Mueller for naturalization No. 14,114, dated March 21, 1955, and of the testimony in support thereof, said petitioner having

appeared in person at a final hearing held this day in open court, it is hereby ordered that petitioner be and he hereby is admitted to become a citizen of the United States of America.