## UNITED STATES v. GEYER.
### Cr. 8654.

United States District Court
D. Connecticut.
Oct. 7, 1952.

Adrian W. Maher, U. S. Atty., New Haven, Conn., J. Frederick Mignone, Asst. U. S. Atty. New Haven, Conn., for plaintiff.

Andrew Geyer, pro se.

HINCKS, Chief Judge.

This is a criminal case, tried to the court on September 30, 1952, in which the defendant had pleaded not guilty to a charge of refusal to submit to induction. The defendant waived all right to be represented by counsel. And although the parties waived a right to request special findings, I think it desirable for all concerned now to supplement my verdict of not guilty by a written record of my findings of salient facts and rulings of law.

The case is one in which the defendant appealed from a I-A classification by his

draft board. The appeal board likewise classified the defendant as I-A. To the extent that this action overruled the defendant's claim to a IV-D classification, I find its action unexceptionable. But in overruling the defendant's claim to classification as a conscientious objector, the board's action, I ruled, was invalid not because of lack of evidence adequately to support its action but because some of the evidence which might have affected the board's decision was not made available to it by the Department of Justice when requested.

The facts on which this ruling was based were briefly these. The board, when it received the file on appeal, as directed by the Act, 50 U.S.C.A. Appendix, § 456(j) referred the claim of conscientious objection "to the Department of Justice for inquiry and hearing." The Department caused an inquiry to be made, the results of which in written form were before the hearing officer of the Department who held the hearing. The hearing officer recommended that the defendant be classified as I-A-O. The Department did not concur in such recommendation but instead by letter from a Special Assistant to the Attorney General recommended Classification as I-A. The board requested access to the investigative report of the Department which had been before the Hearing officer and the recommending assistant of the Attorney General. So far as appears, the defendant at no stage had seen the report or had asked to see it. The Board's request to see the investigative report was refused by the Department for reasons not disclosed in the record of this case. However, the then Special Assistant to the Attorney General by letter to the Board stated that the investigative report "does not contain any substantial information which has not already been covered in the Hearing officer's report" and in his own letter of recommendation. Thereupon, the board made its classification of I-A without having seen the investigative report, although conceivably its contents might have affected its decision.

It is true that on the precise point of law involved the Act is not explicit: when it directs the board to refer the registrant's claim of conscientious objection "for inquiry and hearing" by the Department, it does not specify that the product both of the inquiry and of the hearing shall be made available to the board. But neither does the Act suggest any reason why the product of the hearing should go forward to the board, as it did here as a matter of course, and the product of the inquiry should be withheld.

There are, however, other provisions in the Act from which I think one must imply a Congressional intent that the board should have access to the investigative report. The same section of the Act proceeds to provide that after inquiry a hearing shall be had of which the registrant shall be notified. The natural import of this provision is, I think, that the investigative report resulting from the inquiry shall be made a part of the record for consideration by all directly concerned with the classification. Under the contemplated procedure the registrant has already had an opportunity before the draft board to put everything desired into the record. That being so there would be no point to notify him to appear in the departmental hearing just to put in more evidence. Thus, by elimination, the only useful purpose of notice at that stage was to give the registrant opportunity to meet the contents of the report. And if such was the underlying purpose, the inference is required that the Act envisaged that the investigative report should be made a part of departmental report and go forward in its entirety for the appeal board to scan and evaluate.

Furthermore, the Act (same section) provides that the board "shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department * * *." This clearly imports that the board shall evaluate the worth of the recommendation which is a task impossible of fulfillment unless the board has access to the entire record on which the recommendation is based.

Congress was not using empty words when in Sec. 451 of the Act it solemnly

declared "that in a free society the obligations and privileges of serving in the armed forces and the reserve components thereof should· be shared generally, in accordance with a system of selection which is fair and just, and which is consistent with the maintenance of an effective national economy." A system in which selections might be made in uninformed reliance upon the recommendation of an executive officer bottomed perhaps on secret police reports, would indeed make a mockery of that high declaration of policy. Only if the Act be construed to require that the investigative reports shall become a part of the record open to the appeal board and all concerned is the "system of selection * * * fair and just" within our Anglo-Saxon concepts of justice and due process.

Although I prefer to base my controlling ruling on the point of statutory construction discussed above, it may be noted that I reach the same result as my colleague in this district, Judge Smith, in his Memorandum of Decision of July 28, 1952 in United States v. Oller, and United States v. Donovan, 107 F.Supp. 54. And I may add that I fully agree with Judge Smith in the view that if, contrary to my construction of the Act, Congress intended that the investigative reports of secret police, although made for their effect on the determination, should be withheld from the reviewing authority, the resulting system in that one respect was violative of the American concept of due process. Cf. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; United States ex rel. Brandon v. Downer, 2 Cir., 139 F.2d 761; United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, certiorari denied 323 U.S. 795, 65 S.Ct. 439, 89 L.Ed. 650; Gibson v. United States, 329 U.S. 338, 67· S.Ct. 301, 91 L.Ed. 331; United States ex rel. De Graw v. Toon, 2 Cir., 151 F.2d 778; United States ex rel. Reel v. Badt, 2 Cir., 141 F.2d 845; Niznik v. United States, 6 Cir., 173 F.2d 328, certiorari denied 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed 1733.

In Imboden v. United States, 6 Cir., 194 F.2d 508, 510 the court did not even consider the point of statutory construction on which my ruling is principally predicated. The case may also be distinguished on the facts. There it did not appear that the investigative report had been withheld from the scrutiny of the appeal board: on the contrary in the Imboden case the fact was that the appealing registrant was informed that the F.B.I. report " 'becomes a part of your Selective Service File' " and hence, presumably was accessible to the appeals board.

While, of course, the verdict of acquittal is a final determination of the pending charge based, as I hold, on an illegal classification, nothing in the Constitution or the Act precludes further proceedings under the Selective Service System or a successful prosecution for refusal to comply with an order for induction based upon another, and valid, order of classification, if any such shall be made.