## UNITED STATES v. DAL SANTO.
### No. 10783.

United States Court of Appeals
Seventh Circuit.

June 25, 1953.

Rehearing Denied July 20, 1953.

Writ of Certiorari Denied Oct. 19, 1953.

See 74 S.Ct. 71.

430

Otto Kerner, Jr., U. S. Atty., James B. Parsons and Abner F. Bond, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Karl M. Milgrom, Chicago, Ill., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

After a trial to the court, a jury having been waived, defendant was convicted of a violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, §§ 451–470, for refusing to submit to induction. Selective Service Reg. 1632.14 (b) (5).

On September 18, 1948, defendant registered with Local Board 54, Cook County, Illinois. The defendant filled out the Selective Service questionnaire mailed to him on September 22, 1950, and returned it to the local board on October 3, 1950, claiming therein that he was a minister of religion and that about two months previously he had been ordained a minister of Jehovah's Witnesses, and also stating that he was employed as a television repairman in the field. With his questionnaire he filed certain affidavits and a certificate signed by 18 persons relating to his claimed study for the ministry as one of Jehovah's Witnesses. In some of these statements defendant was referred to as an ordained minister; in others as a student for the ministry. The various questions in the questionnaire were all answered by defendant except Series XIV relating to conscientious objectors. Thus, at the time he filed his questionnaire, he did not claim to be a conscientious objector, nor request the special form for conscientious objectors.

On October 12, 1950, the local board placed defendant in Class I–A and ordered him to report for pre-induction physical examination. One day prior to his reporting for such physical examination he filed with the board Form 150, which is the special form for classification as a conscientious objector. On March 27, 1951,

he was physically examined, found acceptable, and received notification thereof. On April 7, 1951, defendant wrote the local board requesting a personal appearance before the board "to prove to you by your own laws that my proper classification should be that of a Minister, IV–D." The board granted defendant's request, and a hearing was held.

The principal discussion between the defendant and the board at the hearing pertained to defendant's claimed ministerial status. However, his claim as a conscientious objector was mentioned, and the following notation was made by the board: "Registrant said he would fight to defend himself." The board considered that defendant was not eligible for a IV–D ministerial classification and that he did not qualify as a conscientious objector, and therefore retained him in Class I–A, notifying defendant of its action.

Defendant appealed to the Selective Service Appeal Board and under Sec. 6(j) of the Universal Military Training and Service Act the Appeal Board referred defendant's claim that he was a conscientious objector to the Department of Justice for inquiry and hearing. An investigation made by the Federal Bureau of Investigation (hereafter referred to as F.B.I.) was completed by September 14, 1951. The hearing officer conducted a hearing on September 20, 1951, at which defendant and 16 witnesses appeared. The hearing officer reported that the F.B.I. report "developed no derogatory facts" about the defendant, and that he "made a very favorable impression on the hearing officer," but recommended that defendant be classified in Class I–A, because (1) "his (defendant's) religious zeal coincides with general discussion of the draft," and (2) "his religious activities have been so recent, it is not clear that his conscientious objections are based entirely on his religious training and belief." Sec. 6(j) of the Act provides, "The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with

the record on appeal from the local board." By a vote of four to nothing, the Appeal Board voted to retain defendant in Class I–A.

On January 18, 1952, the local board ordered defendant to report for induction on February 5, 1952, on which date he actually reported at the induction center but refused to be inducted when requested to do so.

A short time before the date of the trial defendant caused a subpoena *duces tecum* to be issued, seeking to force the United States Attorney, the Selective Service Officer, and the Special Agent in charge of the F.B.I. at the Chicago District to produce the investigative report of the F.B.I. which had been submitted to the hearing officer. No suggestion was made by defendant's counsel that the report be first submitted to the court for his determination as to the materiality of its contents. There is also no evidence that the defendant ever demanded that the F.B.I. report be placed in his file or that he sought such report from the local board, the Appeal Board, or the hearing officer.

At the opening of the trial the government's motion to suppress the subpoena *duces tecum* was granted.

Defendant places much emphasis on his claim of error that the Department of Justice failed to include the F.B.I. report in his Selective Service file on the return of same to the Appeal Board. Forty pages of the printed brief are utilized in discussing this contention. Defendant insists that the omission of the F.B.I. report from defendant's file was in violation of the Universal Military Training and Service Act and the regulations thereunder, and also that it was in violation of the Fifth Amendment to the Constitution of the United States.

At the time of the oral argument of this cause, a conflict of opinion on this question existed between the Second and Ninth Circuits. In United States v. Nugent, 2 Cir., 200 F.2d 46,[1] and United States v. Packer, 2 Cir., 200 F.2d 540, the court held

---

1. The court relied upon and quoted from United States v. Geyer, D.C., 108 F.Supp. 70.

432

that the registrant was entitled to examine the F.B.I. report and that the Universal Military Training and Service Act impliedly required that such report be made of record for consideration of all directly concerned. In Elder v. United States, 9 Cir., 202 F.2d 465, the court refused to follow or approve of the Nugent and Packer decisions, holding that the statute neither requires nor contemplates the inclusion of the investigative report in the Selective Service file.

The United States Supreme Court has recently settled the conflict on this issue. In United States v. Nugent (United States v. Packer), 346 U.S. 1, 73 S.Ct. 991, the court held that failure to produce the F.B.I. report did not render registrant's classification illegal. The court said, 73 S.Ct. at page 994: "We think that the statutory scheme for review, within the selective service system, of exemptions claimed by conscientious objectors entitles them to no guarantee that the FBI reports must be produced for their inspection. We think the Department of Justice satisfies its duties under § 6(j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair resume of any adverse evidence in the investigator's report."[2] Referring to the argument that registrants were denied "a hearing" before the Appeal Board, the Supreme Court said, 73 S.Ct. at page 995: " * * * but we do not think that the word 'hearing'—when put in the context of the whole scheme for review set forth in § 6(j)—comprehends the formal and litigious procedures which respondents' interpretation would attribute to it."

The Supreme Court pointed out that when a local board denies a registrant's claim for exemption on the ground he is a conscientious objector, the responsibility on a review falls on the Appeal Board, saying, 73 S.Ct. at page 995: "If the local board denies the claim, the responsibility for re-

view, if sought, falls upon the appeal board. The Department of Justice takes no action which is decisive. Its duty is to advise, to render an auxiliary service to the appeal board in this difficult class of cases. Congress was under no compulsion to supply this auxiliary service—to provide for a more exhaustive processing of the conscientious objector's appeal. Registrants who claim exemption for some reason other than conscientious objection, and whose claims are denied, are entitled to no 'hearing' before the Department. Yet in this special class of cases, involving as it does difficult analyses of facts and individualized judgments, Congress directed that the assistance of the Department be made available whenever a registrant insists that his conscientious objection claim has been misjudged by his local board."

The Supreme Court also decided that the registrants were not denied any rights under the Fifth Amendment, a claim which was also made by the defendant in the case at bar. Nor was the defendant herein.

■ Under the authority of the Supreme Court's decision in the Nugent and Packer cases, supra, we overrule the principal ground for reversal urged by defendant. However, defendant also urges that the case should be reversed because, he claims, the local board, the hearing officer, and the Appeal Board all acted arbitrarily and capriciously in denying him the status of a conscientious objector.

From the very first, defendant claimed he was entitled to a ministerial classification. Every letter he wrote, every affidavit he filed, and at the hearing he asked for and was granted, his every move, including filing of the conscientious objector's Form 150, was directed toward securing a IV–D classification. Thus the local board had before it a physically fit and otherwise acceptable registrant who in October, 1950, demanded a ministerial classification and asked for a hearing to prove such classification, but who in March, 1951, one day prior to his physical examination, filed a claim as a conscientious objector, which

2. In the case at bar the hearing officer reported that the F.B.I. report "developed no derogatory facts" about the defendant.

he followed up with a letter stating that he was relying upon his conscientious objector claim as additional proof of his right to a ministerial classification, and who, two days after being notified that his physical examination had been successful, again demanded a hearing in order that he might prove that his proper classification should be that of a minister. The board granted him the hearing which he requested.

Defendant cites the testimony of George G. Goodman at the trial in district court. Goodman was a member of Local Board 54, and on cross-examination, in answer to a question as to what a man would have to be in order to qualify as a conscientious objector, replied: "He has to be a full-time minister, a full-time minister of the Gospel, and devote most of his time, under the regulations, as a minister." Goodman pointed out that defendant was devoting most of his time as a radio and television service man.

█ Of course a conscientious objector need not be a full-time minister. Goodman may well have been confused in giving his answer, because all of defendant's efforts and arguments before the local board had been slanted toward obtaining a ministerial classification. However, the official record of the local board's action demonstrates that in determining defendant's proper classification it relied on defendant's testimony that he would fight to defend himself. Defendant's explanation was that he would fight in defense of himself and the "Kingdom interests."

Even conceding that the local board would be in error if it denied defendant a conscientious objector classification solely on the basis that, believing in self-defense, he could not qualify as a conscientious objector, the decision of the board shall be final even though erroneous. The Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 460(b) (3), provides: " * * * local boards * * *, shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title, of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. * * * The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President."

In Estep v. United States, 327 U.S. 114, the court said, at page 122, 66 S.Ct. 423, at page 427, 90 L.Ed. 567: "The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Contrary to defendant's assertion, we think there is nothing in the record to indicate that the local board failed to consider the various items of evidence which defendant submitted to it. Furthermore the decision of the Appeal Board was not based on the proposition that defendant could not be a conscientious objector because he was willing to fight in self-defense or because he was not a full-time minister. The report of the hearing officer noted that defendant's religious zeal coincided with general discussion of the draft and that his religious activities were so recent that it was doubtful that his conscientious objections were based entirely on his religious training and belief. For those reasons the hearing officer recommended that defendant be classified I-A, and the Appeal Board, by a vote of 4 to 0, gave him that classification.

We are convinced that the action of the local board, even if erroneous, was not arbitrary or capricious. The record discloses that there was no action of the hearing officer or of the Department of Justice that was arbitrary, capricious, or which deprived the defendant of any rights under the Fifth Amendment. Finally, the action of the Appeal Board, acting independently, was neither arbitrary nor capricious. We agree with the statement of the trial judge, made at the end of the trial, "I think your client has had a very fair hearing all of the way through."

Judgment affirmed.