### UNITED STATES v. DE LIME.
### Crim. A. No. 392–53.

United States District Court
D. New Jersey.
June 2, 1954.

752

William F. Tompkins, U. S. Atty., Newark, N. J., for plaintiff; by I. Edward Amada, Asst. U. S. Atty., Newark, N. J.

Frankel & Frankel, Paterson, N. J., for defendant; by Esther Strum Frankel, Paterson, N. J.

MODARELLI, District Judge.

Defendant, Thomas Louis De Lime III, was indicted under the Selective Service Act, 50 U.S.C.A.Appendix § 462, for wilfully refusing to submit to induction in the armed forces of the United States. Trial by jury was waived by defendant. Lengthy briefs were submitted after trial.

Defendant claims he was illegally ordered to report for induction as a result of the arbitrary and capricious action of his local board in failing to give consideration to his claim for deferment as a conscientious objector under Section 6 (j) of the Act, 50 U.S.C.A.Appendix, § 456(j), which provides exemptions from military service—partial or full, depending upon the circumstances—for any person "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." The basic issue is whether, under the established facts and law, the defendant was denied any of his proceed-

ural rights under the Selective Service Regulations.

On October 18, 1951, the defendant's board mailed to him a classification questionnaire; on October 30, 1951, the completed questionnaire accompanied by a completed Special Form for Conscientious Objector was received by the board. The questionnaire instructed any registrant "who, by reason of religious training and belief, is conscientiously opposed to participation in war . * * *" to sign the following statement: " * * * and for this reason hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150) which I am to complete and return to the local board for its consideration." Defendant signed the statement, but struck out the words "religious training and." The chief clerk of the board testified that although the board's records did not indicate that both the questionnaire and special form simultaneously were sent to the defendant, she believed they were. The defendant again struck out the words "religious training and" on the special form and from a statement which he signed similar to that contained in the questionnaire. In written responses to questions contained in the special form regarding his religious training and beliefs, defendant wrote that he did not believe in a Supreme Being "In the generally accepted sense."; that "My beleif [sic] is philosophical rather than religious. It is based on the assumption of equality among mankind, and that no man shall make of himself a god." Further, "I acquired my beleif [sic] by thinking, during the past 19 years. No person whom I know holds the same or similar beleifs [sic] and I have not been taught in any way by a statement of such beleifs [sic]." On November 13, 1951, the board received a written statement from defendant:

"I, Thomas Louis deLime III, do hereby revoke and catagorically [sic] deny any and all statements made in answer to questions which presuppose a special knowledge as to the interpretation or definitions of words or phrases used therein; when said interpretations or definitions are not in accord with general everyday English usage, or first or second standard dictionary definitions; or when said words or phrases acquire special interpretations or definitions due to any federal or state law, intent of those who wrote, spoke, or voted upon such a law, legal precedent, rulings of selective service boards, or of any other individuals or group of individuals, or for any other reason." [signed] Thomas Louis deLime III.

On or about January 16, 1952, defendant was classified 1–A by the board. Pursuant to defendant's request, he personally appeared before the board on February 6, 1952, and testified in response to questions. The 1–A classification was continued. If the conscientious objector's claim for relief under Section 6(j) is denied by his local board, he is entitled to further review by an "appropriate appeal board." All such appeals are referred to the Department of Justice for an "appropriate inquiry" and a "hearing." The Department of Justice then makes a recommendation to the appeal board, which may or may not follow it in reviewing the local board's classification. This case then concerns itself with the procedure, established by regulation and practice, which is followed when a conscientious objector's appeal is referred to the Department of Justice. Shortly after the 1–A classification was continued, an appropriate appeal was instituted.

In conformity with the above procedure, the appeal board forwarded the case to the Department of Justice, which conducted a hearing and rendered an advisory opinion to aid the appeal board in its final determination, as required. Defendant was notified of the pending hearing, of his "right to be present at such hearing and to present any pertinent evidence in support of your claim"

to exemption as a conscientious objector. Attached to the notice were two pages of instructions fully apprising defendant of the nature of the hearing and his rights thereat. Pursuant to the instructions, defendant requested "the general nature and character of any evidence in his [hearing officer] possession which is unfavorable to, and tends to defeat, the claim of the registrant." The hearing officer sent a letter to defendant, setting forth information from documents in the board's file: Defendant's disclaimer of any religion; defendant's objections to military service on philosophical grounds rather than religious; defendant's appearance before the board on February 6, 1952, during which he stated that he would not have crossed out the words "religious training and" on the questionnaire and special form had he known the wording of the law. This despite the fact that the defendant testified before the board that subsequent to filing the questionnaire and special form he had researched the law. Following the appellate hearing, the Department of Justice submitted its advisory opinion to the appeal board, recommending that defendant's claim for exemption be denied, which was the action taken by the appeal board.

Let us now examine the issues set forth by the defendant to determine whether he was denied procedural due process in violation of the Fifth Amendment.

Defendant argues that the presence of a government appeal agent, hereinafter referred to as agent, when he appeared before the board on February 6, 1952, "was in excess of the jurisdiction granted the local board and flagrantly violated the regulations * * *."

The agent's duties, generally, under Regulation 1604.71, are to: (a) appeal from any classification by a local board which, in his opinion, should be reviewed by the appeal board; (b) attend such local board meetings at its request; (c) recommend to a local board a reopening of any case where the interests of jus-

tice, in his opinion, require such action; (d) render such legal assistance to a local board as it may request; and (e) protect the interests of the government and the rights of the registrant.

Defendant makes much of the fact that under various Selective Service Regulations the mere presence of the agent at the hearing was unauthorized; that he had no express authority to participate in the questioning of defendant; that having so participated, he should have submitted to the board a written report of his findings and recommendations.

■■ It is true that the regulation which sets forth the agent's duties does not expressly direct him to attend the board hearing during which the registrant testifies in an attempt to convince the board members that he should be reclassified. The transcript of the hearing shows that the agent was carrying out one of his duties, to determine whether "in his opinion" defendant's classification "should be reviewed by the appeal board." I cannot hold that the agent's presence and extensive questioning of defendant was in violation of the general delegated duty to act as such agent. While his questioning was incisive as to defendant's basis for opposing duty in the armed forces, it did not exceed the scope necessary to ascertain whether defendant's tenets of belief entitled him to a conscientious objector's classification within the meaning of the statutory definition, which is not a usurpation of the board's duty to classify registrants; the agent properly acted as an aide to the board. And in this case, there is no evidence that the agent's participation in any way prejudiced defendant. The extent of the agent's participation in the hearing was that he read to defendant the statutory definition of conscientious objector, 50 U.S.C.A.Appendix, § 456(j) and remarked that defendant had informed the board that his objection to participation in war was based on philosophical and not on religious grounds. Moreover, defendant testified fully as to

his beliefs and there is no evidence that he was denied the right to say anything at the hearing; and although defendant testified that he was not permitted to explain the nature of his beliefs to the board at the hearing because of constant interruptions by his interrogators and questioning by the agent regarding the basis of his opposition to serving in the armed forces, the transcript of the hearing (the transcribing stenographer testified for the government on rebuttal that there was nothing that was said by the defendant that was not contained in the transcript and that she "transcribed everything") clearly shows that defendant fully explained his beliefs to the board members. I find defendant received a fair hearing.

Defendant argues that he further was denied due process because of the government's failure to produce at the trial the F.B.I. report submitted to the hearing officer assigned by the Department of Justice to render an advisory opinion to the appeal board.

It should be noted that three weeks prior to the trial, defendant's counsel appeared and argued before Judge Smith of this court, a motion under Rule 17(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., to produce the F.B.I. report, which was denied. The transcript of Judge Smith's remarks shows:

"Her request for the FBI report will be denied on the basis of the expressed provision of the Statute, 50 USCA Appendix 456(j). There is no indication before the Court that pursuant to the provisions of the Statute or the regulations enacted thereunder, this defendant ever made any request for a summary. If he did, I don't know. There is nothing before the Court upon which we can decide it."

At the trial, however, it was shown that defendant had requested the summary of adverse information, in his file in order properly to prepare for his appellate administrative hearing. Although defendant's attorney should have informed Judge Smith of such request, and regardless of the possible applicability of the "law of the case" doctrine, Messenger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152; Jurgenson v. National Oil & Supply Co., 3 Cir., 63 F. 2d 727; Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 2 Cir., 10 F.2d 937, the issue— whether the "fair resume" doctrine enunciated in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, requires, in this case, the trial court to compare, with the aid of counsel, the F.B.I. report with the summary sent to the registrant—is important and merits discussion.

Four cases have been reported which pertain to the problems presented by the F.B.I. report. United States v. Wider, D.C., 117 F.Supp. 484, was a denial of defendant's motion to produce the F.B.I. report to assist him in preparing for trial, the court relying on United States v. Nugent, supra; United States v. Stasevic, D.C., 117 F.Supp. 371, denied the government's motion to quash a subpoena duces tecum to produce the F.B.I. report, the court holding that the report was admissible evidence as a basis for determining the question whether it contained unfavorable evidence so as to require the furnishing of a fair resume to the defendant; United States v. Evans, D.C., 115 F.Supp. 340, held that the burden is on the government to prove that the defendant was furnished at least with a fair resume; that it was the duty of the court, with the aid of counsel, to determine whether the resume was fair, so that it was necessary for the government to produce the report at the trial; United States v. Dal Santo, 7 Cir., 205 F.2d 429, certiorari denied 346 U.S. 858, 74 S.Ct. 71, affirmed, on the basis of the Nugent case, the lower court's order quashing a subpoena duces tecum to produce the F.B.I. report.

■ The question now presented arises from the decision in the Nugent case, wherein the court held:

"We think that the statutory scheme for review, within the selective service system, of exemptions claimed by conscientious objectors entitles them to no guarantee that the FBI reports must be produced for their inspection. We think the Department of Justice satisfies its duties under § 6(j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair resumé of any adverse evidence in the investigator's report." At pages 5 and 6 of 346 U.S., at page 994 of 73 S.Ct.

But the court expressly did not decide the question as to what constitutes a "fair resume," for the reasons that one respondent never requested any summary from the hearing officer, and as to the other respondent, properly no summary was sent to him because the F.B.I. report did not contain any unfavorable information. Thus, a registrant is entitled, upon request, to a "fair resume" of adverse information in the F.B.I. report in order to enable him to present rebuttal evidence before the hearing officer assigned by the Department of Justice. But, when a registrant refuses to submit to induction and is indicted, must the full report be produced at the trial for the inspection of court and counsel to determine whether the resume was "fair"? I hold that under the facts in this case procedural due process does not require this court to compare the summary submitted to defendant with the full F.B.I. report.

While the Supreme Court in the Nugent case has directed that a *registrant* is entitled to a "fair resume" of any adverse evidence in the investigator's report, the Court also said in that case:

"Congress was under no compulsion to supply this auxiliary service —to provide for a more exhaustive processing of the conscientious objector's appeal. Registrants who claim exemption for some reason other than conscientious objection, and whose claims are denied, are entitled to no 'hearing' before the Department. Yet in this special class of cases, involving as it does difficult analyses of facts and individualized judgments, Congress directed that the assistance of the Department be made available whenever a registrant insists that his conscientious objection claim has been misjudged by his local board. * * * But it has long been recognized that neither the Department's 'appropriate investigation' nor its 'hearing' is the determinative investigation and the determinative hearing in each case. It has regularly been assumed that it is not the function of this auxiliary procedure to provide a full-scale trial for each appealing registrant." At pages 8 and 9 of 346 U.S., at page 996, of 73 S.Ct.

And in Cox v. United States, 332 U.S. 442, 454, 68 S.Ct. 115, 121, 92 L.Ed. 59, the Court said:

"It seems to us that it is quite in accord with justice to limit the evidence as to status in the criminal trial on review of administrative action to that upon which the board acted. [Citing cases.] As we have said elsewhere the board records were made by petitioners. It was open to them [registrants] there to furnish full information as to their activities. It is that record upon which the board acted and upon which the registrants' violation of orders must be predicated."

■ I interpret such language to mean that there is no procedural due process compulsion that the full F.B.I. report be produced at the trial when, as

in this case, the evidence which was before the board overwhelmingly justified the board's refusal to classify the registrant as a conscientious objector. A case could arise in which the appellate hearing would be decisive in that the evidence before the local board would have been either conflicting or favorable to a registrant's contention; then, on appeal, the failure to send to the registrant a "fair resume" would prejudice his position by denying to him information necessary for him to properly prepare his case for appeal. In such a case, it would be the duty of the trial court to decide whether the resume furnished the defendant was "fair." But in this case, the statements by defendant to the board and his numerous clear documentary manifestations of a lack of "religious training and belief"—a necessary element for a conscientious objector's classification—clearly established the basis for the local board's determination. Moreover in response to defendant's request for information "as to the general nature and character of any evidence in [the possession of the hearing officer] which is unfavorable to and tends to defeat" defendant's claim, the hearing officer responded: "The file clearly shows that you disclaim having any religion; that as to your objections to entering military service your reasons are philosophical, rather than religious." Thus defendant was apprised fully of the nature of the adverse evidence and could properly prepare for his appellate hearing.

Defendant argues that he did not receive a fair hearing before the hearing officer because he was prohibited from making a complete presentation of his claim.

■ Defendant testified at the trial he was prohibited from reading or filing a prepared statement setting forth the same explanation of the nature of his belief as was before the board. The advisory opinion by the Department of Justice sent to the appeal board, however, contains the following paragraph:

"Registrant personally appeared at the hearing and stated that he is not an atheist but an agnostic and that in his mind 'philosophy' and 'religion' are interchangeable words. From this he argued that his philosophy constitutes a very real and personal religion of his own and a basis for his conscientious objector claim. He went on to say that there is a basis for his beliefs in the Methodist Church which he attended as a youth."

The "hearing" referred to in that opinion letter must refer to the hearing before the hearing officer because the transcript of the board hearing does not contain all of the statements described in that letter. Thus, it appears that defendant did, in fact, describe the nature of his belief to the hearing officer. I cannot find from the evidence before me that defendant did not receive a fair hearing on the administrative appellate level.

■ Finally, defendant argues that "he was denied procedural due process when the Department of Justice made the arbitrary determination that defendant is not a religious objector." The opinions in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 427, 90 L.Ed. 567 and Cox v. United States, supra, hold that the "courts are not to weigh the evidence to determine whether the classification made by the local boards was justified", so that if there is a "basis in fact" in the documentary evidence and the registrant's testimony before the board, then it cannot be said that the classification is arbitrary. I hold that there is a basis in fact for defendant's classification, such basis existing in the aforementioned statements written by defendant as answers to the classification questionnaire and to the Special Form for Conscientious Objector and also his testimony before the board. The statutory definition of conscientious objector in 50 U.S.C.A.Appendix, § 456 (j) is:

"* * * any person * * * who, by reason of religious training

and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

I find that the following facts are bases upon which the board could have properly based its denial of defendant's claim to a conscientious objector's classification within the meaning of the statutory definition:

1. Defendant carefully crossed out the words "religious training and" when signing the statement in his classification questionnaire to the effect that he conscientiously objected to war.

2. Defendant carefully crossed out the words "religious training and" when signing the claim for exemption on the Special Form for Conscientious Objector.

3. On the Special Form defendant wrote, in describing the nature of his belief, that his belief was "philosophical rather than religious."

4. On the Special Form defendant wrote, in explaining the method by which he acquired his belief: "I acquired my beleif [sic] by thinking, during the past 19 years. No person whom I know holds the same or similar beleifs [sic] and I have not been taught in any way by a statement of such beleifs [sic]."

5. During the board hearing, defendant's several statements that he did not believe in a Supreme Being.

Having reached these conclusions of law and fact, it is the decision of this court that defendant's classification by the local board was not arbitrary and capricious, and that he was not denied any of his procedural rights under the Constitution. The defendant is guilty as charged in the indictment.