**The UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wayne Edwin NELSON, Defendant-Appellant.**

**No. 11151.**

United States Court of Appeals, Seventh Circuit.

April 15, 1955.

---

**1.** The District Court's Findings of Fact.

Hayden C. Covington, Brooklyn, N. Y., Victor F. Schmidt, Columbus, Ohio, for appellant.

Timothy T. Cronin, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

A written refusal to be inducted into the United States Armed Forces, signed by registrant Nelson, January 8, 1952, impelled his indictment and trial for violating the Selective Service Act of 1948, as amended, 62 Stat. 622, 50 U.S.C.A. Appendix, §§ 451 et seq., 462(a). His conviction, after waiving trial by jury, and overruled motion for judgment of acquittal are before us on review.

Several observations deserve prefatory treatment in this opinion. After defense counsel, during the proceedings below, conceded that no request had been made for a "fair summary" of the Federal Bureau of Investigation report on this conscientious objector claim, the trial judge quashed a subpoena *duces tecum* for that report, citing United States v. Dal Santo, 7 Cir., 1953, 205 F.2d 429. A comment concerning that account of investigation reported by the Department of Justice Hearing Officer, viz.: "The search failed to disclose any derogatory information respecting the registrant," appears in the trial judge's opinion. We think it pertinent at this juncture to recall that in United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 994, 97 L. Ed. 1417, the majority spoke of " * * * a fair resumé of any *adverse* evidence in the investigator's report." (Italics supplied.)

Nelson registered with his Local Board, January 6, 1949, at 18 years of age, and executed his Selective Service Questionnaire in January, 1950, without any mention of conscientious objection. We think it unnecessary in this opinion to chronicle each step and detail all events culminating in Nelson's ultimate classification I–A. Sometime in late December, 1950, after examination, he was found physically acceptable for military service. In February, 1951, he wrote out answers to questions posed in Form 150 (Special Form For Conscientious Objectors) and certified he was opposed to both combatant and noncombatant service. Several affidavits, and a copy of the Watchtower (Feb. 1, 1951) were filed by Nelson with that Form.

"The defendant (Nelson) appeared before the local board and gave testimony," (brief for registrant, p. 4). After that hearing Nelson's Local Board declined to reclassify him, and technically reclassified Nelson I–A. The Wisconsin Appeal Board refused him a Class I–A–O or Class IV–E.

The Department of Justice Hearing Officer, Roy O. West, after hearing Nelson and his witnesses, wrote in his re-

port, of this registrant, that he " * * impressed the Hearing Officer favorably, but there seems to be insufficient evidence of religious training and belief to justify reclassification."

In the letter of transmittal, accompanying West's report to the Wisconsin Appeal Board, a Deputy Attorney General, signatory for the Department of Justice, wrote:

"After examination and review of the entire file and record, the Department of Justice finds that the conscientious objections of * * * (Ed. Nelson) are not sustained on the ground that he has failed to prove that such alleged objections are based upon deep-seated conscientious convictions arising out of religious training and belief."

Section 6(j), Universal Military Training and Service Act, 62 Stat. 612, as amended, 50 U.S.C.A.Appendix, § 456 (j), imposed upon Nelson the burden of demonstrating that: " * * * by reason of religious training and belief, (he was) * * * conscientiously opposed to participation in war in any form." Moreover, this Section lays down these further strictures: "Religious training and belief in this connection means an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological or philosophical views or a merely personal moral code."

Clearly more rigid statutory formulary might defeat Congressional intent and crush the spirit of this legislation since intensity, magnitude and validity of religious training and belief are not susceptible of quantitive analysis within defined limits of precision or accuracy. Consequently, practical methods have evolved for obtaining raw material on which administrative judgments can operate. A registrant supplies some of these ingredients flowing into the crucible of opinions reached by classification authorities, in responding to questions for information elicited through the initial Selective Service Questionnaire; by answering probing questions in Form 150, his affidavits, and certificates. The Government, in turn utilizes Federal Bureau of Investigation reports in certain instances. Of vital importance is the observation and interrogation of, and oral presentation by, the registrant himself.

Since this appeal arises within the framework of a criminal conviction, appraising this record really means coming to grips with the pervasive problem concerning review of Selective Service System administrative decisions. Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. Nelson admits violating the Act, but urges invalidity of his classification, and resultant order of induction, in excuse or justification. We have no business evaluating Nelson's adoption of a belief, either as to its duration or authenticity. Such subjective matters are treated with during selective service processes. See e. g. Religious Conversion, IV Ency. Soc. Sci. 353 (1935). One of the main taproots of our democracy is freedom of conscience and the general rule in § 6(j), supra, is designed to insulate and preserve that right; its individualized application arises from practical necessity.

Section 6(j), however, is not an unconditional guarantee of automatic classification; even the Dickinson majority recognized that, i. e., "Each registrant must satisfy the Act's rigid criteria for the exemption." 1953, 346 U.S. 389, 395, 74 S.Ct. 152, 156.

Since Nelson made no request for a fair summary of the F. B. I. report, this case falls somewhere between the recent holdings of Gonzales v. United States, 75 S.Ct. 409, and Simmons v. United States, 75 S.Ct. 397, handed down at the same time. Because of the following language in the Gonzales case [75 S.Ct. 412], we hesitate to hold that Nelson waived his position concerning the report:

" * * * if the registrant is to present his case effectively to the Appeal Board, he must be cognizant of all the facts before the Board as

well as the overall position of the Department of Justice. * * * (citing)

"But the Department of Justice based its rejection of his (Gonzales) claim on the proximity of petitioner's conversion to his registration for the draft, a contention of which he had no knowledge and no opportunity to meet. *The petitioner was entitled to know the thrust of the Department's recommendation so he could muster his facts and arguments to meet its contentions."* (Italics supplied.)

Ruling that Nelson waived his position concerning the report, by failing to request a fair summary, would only bring us to the correctness of the trial judge's refusal to issue a subpoena *duces tecum* for it.

Judgment of the District Court is reversed, the conviction set aside, and appellant discharged.