**UNITED STATES of America**

v.

**Thomas Louis DE LIME III, Appellant.**

**No. 11379.**

United States Court of Appeals
Third Circuit.

Argued Nov. 5, 1954.

Decided May 26, 1955.

Rehearing Denied June 15, 1955.

Esther Strum Frankel, Paterson, N. J., for appellant.

Albert G. Besser, Asst. U. S. Atty., Newark, N. J. (Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and HARLAN,* Circuit Judges.

BIGGS, Chief Judge.

The defendant, De Lime, has appealed from a judgment of conviction, D.C., 121 F.Supp. 750, he having been found guilty

---

* Mr. Justice Harlan, who heard this appeal when he was a Circuit Judge of the Second Circuit and was designated to sit in the Third Circuit by Mr. Chief Justice Warren, took no part in this decision.

of failure to submit to induction as required by the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462. He had sought to be classified as a conscientious objector but had been classified I-A. The case was tried to the court and the defendant was found guilty. See 121 F.Supp. 750. The defendant contends that he was denied due process of law and that error was committed by the court below.

The defendant's Local Board mailed to him the customary classification questionnaire and also the special form to be executed by conscientious objectors, Form-150. Section 6(j) of the Act, 50 U.S.C.A.Appendix, § 456(j), provides: "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * *" In answering the questionnaire, which in pertinent part was phrased in the language of the statute, the defendant struck out the words "religious training and". He thus changed the phrasing from "By reason of religious training and belief I am conscientiously opposed to participation in war * * *" to "By reason of belief I am conscientiously opposed to participation in war * * *" The defendant also crossed out the words "religious training and" from the pertinent paragraph of Form-150. He thus changed the text of the statement from "I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form * * *" to "I am, by reason of my belief, conscientiously opposed to participation in war * * *" In responding to questions contained in the Form-150 the defendant wrote that he did not believe in a Supreme Being "in the generally accepted sense" and that "My belief is philosophical rather than religious. It is based on the assumption of equality among mankind, and that no man shall make of himself a god." He also wrote:

"I acquired my belief by thinking, during the past 19 years. No person whom I know holds the same or similar beliefs, and I have not been taught in any way by a statement of such beliefs."

About a month after he had filled out the questionnaire and Form-150 the defendant wrote to his Local Board stating: "I * * * do hereby revoke and categorically deny any and all statements made in answer to questions which presuppose a special knowledge as to the interpretation or definition of words or phrases used therein; when said interpretations or definitions are not in accord with general everyday English usage, or first or second standard dictionary definitions; or when said words or phrases acquire special interpretations or definitions due to any federal or state law, intent of those who wrote, spoke, or voted upon such a law, legal precedent, rulings of selective service boards, or of any other individuals or group of individuals, or for any other reason."

At a hearing before the Local Board the defendant asked why he was not classified IV-E as a conscientious objector rather than I-A. The Government Appeal Agent pointed out that on his questionnaire the defendant based his objection to participation in war on philosophical and not on religious grounds. The defendant replied: "Yes—that is within the meaning in the Standard Dictionary." The Appeal Agent then read to the defendant the statutory definition of a conscientious objector as set out in Section 6(j) and said: "You have very frankly stated that your objection is on philosophical and not on religious grounds." The defendant replied: "That was due to the fact that up until two weeks ago I was not fully aware of the wording of the law and did not know it was available * * * I also was not aware until after I filled out Form 150 of the intent of that section of the form, which was the reason I wrote another letter immediately after sending in Form 150." The letter referred to is the one hereinbefore quoted. The Appeal Agent then asked the defendant: "Do you mean

by that, your answers to the questions which were asked of you in that form would have been different had you known what the law was?" The defendant replied: "They would have been different had I known the full meaning of the wording of the questions; I would not have stated that I had no Supreme Being as a basis of my belief and I would not have avoided the word 'religious' had I read it earlier. I had no counsel for advice." The defendant also said that he did not understand some of the questions which in his view were worded in such a way as to constitute a "literary trap." He said he was an agnostic, reiterated that his opposition to participation in war in any capacity, save working in a hospital with the injured, was based on a wish not to participate "in the taking of life in any way," and affirmed that he believed that his conviction "is as religious as he who believes in a Supreme Being." He said that his belief was not based on a Supreme Being but was "scientific."

Following the denial of conscientious objector status to the defendant by his Local Board he appealed to his Appeal Board. The case was referred to the Department of Justice and the usual investigation was then made by the Department of Justice through the Federal Bureau of Investigation. A purported summary of the investigation was sent to the defendant on June 19, 1952 by the Special Assistant to the Attorney General and Hearing Officer for New Jersey. A copy of the letter is set out below.[1] The defendant was not furnished with a copy of the FBI report. After the hearing, a letter was sent by the Department of Justice to the Chairman of the Appeal Board informing the Appeal Board of the result of the investigation and hearing. A copy of this letter is set out in the footnote.[2] The

---

1. As follows:
"United States Department of Justice
United States Attorney
District of New Jersey
Newark 1, New Jersey
June 19, 1952
"Mr. Thomas Louis deLime, III
54 Shrewsbury Avenue
Red Bank, New Jersey
Dear Mr. deLime:
"Yours of the 18th instant is at hand requesting information 'as to the general nature and character of any evidence in (my) possession which is unfavorable to and tends to defeat' your claim as a conscientious objector.
"The file clearly shows that you disclaim having any religion; that as to your objections to entering military service your reasons are philosophical rather than religious.
"Only those who base their objections on religious training and belief are eligible under the law to be considered conscientious objectors.
"I find from the file furthermore, that you were informed of the foregoing, at the time of your appearance before your Local Board on February 6, 1952; that thereupon you stated that you had found out the wording of the statute only a few weeks prior to the hearing; that you might have answered the questions differently if you had known what the law was; that you had no advice of counsel.

I cannot see that this presentation of your case by you was at all helpful to your situation.
"I am further aware that you have taken the position or stated that words are susceptible of various meanings, and I gather that you think that your answers in the questionnaires under proper interpretation might reflect some different result from their apparent meaning.
"There are certain questions that I would like to ask you, and I shall expect to see you at my office at the time set."

2. As follows:
"Washington, D.C.
"October 10, 1952
"Chairman, Appeal Board for the
State of New Jersey, Panel No. 1
Selective Service System
69 Academy Street
Newark, New Jersey
Re: Thomas Louis de Lime, III
S.S. No. 28-2-32-519
"Dear Sir:
"As required by section 6(j) of the Universal Military Training and Service Act, an inquiry was made in the above-mentioned case and an opportunity to be heard on his claim for exemption as a conscientious objector was given to the registrant by * * * [the] Hearing Officer for the District of New Jersey.
"Registrant states on his SSS Form No. 150 that he is not a member of any religious sect and has never been a member.

Appeal Board upheld defendant's I-A classification, and when ordered to be inducted, the defendant refused to submit.

■ If the letter sent by the Department of Justice to the Chairman of the Appeal Board is compared with the letter sent by the Special Assistant and Hearing Officer to the defendant, it will appear that the Department of Justice had acquired certain information by investigation which was not revealed to the defendant. For example, it was not stated in the Hearing Officer's letter to the defendant that "most persons interviewed have no knowledge of registrant's conscientious objector beliefs" or that "he is * * * emotionally unstable," factors affecting his credibility. Upon request, as was made by this defendant, a registrant is entitled to fair notice of the adverse charges of such a report. Simmons v. United States, 1955, 348 U.S. 397, 75 S.Ct. 397. Cf. Gonzales v. United States, 1955, 348 U.S. 407, 75 S.Ct. 409. But it does appear from an examination of the record that the FBI report was read to the defendant by the Hearing Officer. The defendant testified in the course of his trial on this point. What he said is set out below.[3] But in

---

of any organization. He deleted in ink that portion of Series I(b) that would indicate that he takes his stand by reason of "religious training". He states that he does not believe in a Supreme Being "in the generally accepted sense" and that his belief is "philosophical rather than religious". He states that he acquired his belief "by thinking, during the past nine years".

"At his personal appearance before the Local Board on February 6, 1952, upon being told that a philosophical basis was insufficient to sustain his claim, registrant sought to qualify his statements. He stated that he would not have avoided the use of the word religion had he known about the wording of the law. He further pointed out that he had had no legal counsel and that he is not an atheist but an agnostic, that is he might believe in a Supreme Being if there could be proof.

"The investigation discloses that most persons interviewed have no knowledge of registrant's conscientious objector beliefs. Neighbors state that he is of an esthetic and philosophical temperament. Records of Ridgewood High School indicate that he is of superior intelligence, emotionally unstable and intolerant of everyone. A teacher, one employer and references are aware of his conscientious objector claim and believe him to be sincere and honest.

"Registrant personally appeared at the hearing and stated that he is not an atheist but an agnostic and that in his mind 'philosophy' and 'religion' are interchangeable words. From this he argued that his philosophy constitutes a very real and personal religion of his own and a basis for his conscientious objector claim. He went on to say that there is a basis for his beliefs in the Methodist Church which he attended as a youth.

"The Hearing Officer noted that while registrant claims to have a personal religion, he does not believe in any respect in the supernatural nor does he have a definite belief in a Supreme Being, adequate proof in his judgment being lacking. He concluded that registrant is not by reason of religious training and belief conscientiously opposed to either combatant or noncombatant service, but that his objections arise from philosophical considerations and personal convictions due to his nature and temperament.

"After consideration of the entire file and record, the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained.

"The Selective Service Cover Sheet in the above case is returned herewith."

3. The defendant testified as follows:

"Well, immediately after I entered the room he [the Hearing Officer] told me he was going to read from a report and that if anything in the report required additions from me, or I had any questions, corrections or additions to make, as to what he was reading, that I should stop him and tell him so.

"He then began to read the report very quickly and several times I tried to stop him and—with a question or comment—and he told me to wait until he was through reading the report.

"The Court: What report was he reading, by the way?

"The Witness: I do not know what report he was reading. He told me it was the F.B.I. report, but I did not see it, so I do not know what it was.

the absence of countervailing testimony we think that this reading cannot be treated as the equivalent of fair notice or a fair résumé of adverse charges in the FBI report. It was too hurried according to the only relevant testimony. A fair reading might be the equivalent of a fair résumé but such an issue is not before us on the present record.

■ Yet despite the failure of the Department of Justice to furnish the defendant with a fair résumé of what adverse information it had, the conviction must be affirmed. As has been indicated the feature of the instant case is that the defendant contended that he was entitled to exemption on philosophical rather than religious grounds and when he found that his philosophical grounds were insufficient he attempted unsuccessfully to shade them into religious beliefs. The only statements made by the defendant that even look in the direction of the statutory exemption were to the Hearing Officer that his "philosophy constitutes a very real and personal religion of his own and a basis for his conscientious objector claim" and that "there is a basis for his beliefs in the Methodist Church which he attended as a youth." These statements, reported in the letter of the Department of Justice to the Appeal Board, were found by the Appeal Board to be insufficient to support a claim for exemption as provided by Section 6(j). The support they afford to a claim for exemption on the basis of *religious training and belief* is *nil*.

Even if there were evidence that the defendant had based his claim for exemption generally on religious grounds, his claim *does not come within the scope* of the statutory definition of religious grounds providing for exemption. Section 6(j) of the Act states: "Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, * * *." There is no evidence that the defendant's belief had "relation to a Supreme Being". On the contrary, the record contains the defendant's many denials of any belief in a Supreme Being. In completing his Form-150, the defendant stated that he did not believe in a Supreme Being "in the generally accepted sense." At the hearing before the Local Board the defendant affirmed that his belief was "not based on any theory of relation to a Supreme Being." He said: "I am an agnostic. I know what I believe. I do not accept the existence of a Supreme Being but believe if one exists, no man would know. In other words, I do not believe that there is one, but am open to proof that there could be one."

Consequently, the defendant's own uncontradicted statements demonstrate that his claim was not based on "religious training and belief," within the meaning of the statute. Therefore, he was not prejudiced by not receiving an adequate or fair résumé of the FBI report. The fact that his credibility was attacked in the report was immaterial for if everything he had said in support of his claim for exemption was fully believed his position continued to lie entirely outside of the statute.

■■ The requirement that a registrant receive a fair résumé of any adverse information in an investigative report is not constitutional in origin but is derived solely from the Universal Military Training and Service Act. United States v. Nugent, 1953, 346 U.S. 1, 8–9, 73 S.Ct. 991, 97 L.Ed. 1417. The purpose in giving the defendant a right to a fair résumé is to "permit the registrant to defend against the adverse evidence—to explain it, rebut it, or otherwise detract from its damaging force." Simmons v. United States, supra, 347 U.S. at page 405, 75 S.Ct. at page 401. Although a registrant "need not specify the precise manner in which he would

---

"A. (continuing) At any rate he did not allow me to interrupt the reading, after he had told me that that was what I was to do, telling me each time to wait until he was finished.

"When he was finished I could not remember any of the points that he had covered as he read, because at the end of the report he made some comments on the basis of what was in the report."

have used this right—and how such use would have aided his cause—in order to complain of the deprivation", Simmons v. United States, supra, 347 U.S. at page 406, 75 S.Ct. at page 402, the defendant in the instant case could not have been prejudiced by the failure to furnish him a fair résumé because the denial of conscientious objector status was necessitated by his own statements and was not based on any rebuttable information acquired from other sources as in Simmons. This is not a case where, despite a lack of prejudice, proceedings must be vitiated if procedural requirements are not met. Cf. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

The other points raised by the defendant do not require discussion. They are without merit. The defendant was properly classified. He received due process both from the Selective Service Authorities and from the court below and no error was committed. See Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. See also United States v. Borisuk, 3 Cir., 1953, 206 F.2d 338.

The judgment of conviction will be affirmed.